48 P.3d 980 (2002)
146 Wash.2d 631
STATE of Washington, Petitioner,
v.
Angel CORIA, Respondent.
No. 70879-7.
Supreme Court of Washington, En Banc.
Argued November 29, 2001.
Decided June 27, 2002.
Gerald Home, Pierce County Prosecutor, Kathleen Proctor, Deputy Prosecutor, Michelle Luna-Green, Deputy Prosecutor, for Petitioner/Appellant.
Pattie Mhoon, Tacoma, for Appellee/Respondent.
OWENS, J.
Defendant Angel Coria was convicted of malicious mischief in the second degree for damaging community property owned by him and his wife, Kristen Coria. The defendant contends that because he is co-owner of the property, he did not damage "property of another" within the meaning of the malicious mischief statute. The Court of Appeals, Division *981 Two, agreed and reversed the conviction. The state seeks review. We reverse the Court of Appeals, holding that the defendant did damage "property of another."

FACTS
On Saturday, December 5, 1998, the defendant and his wife had an argument at a restaurant in Tacoma. After leaving, they had an altercation in the car, in which Mrs. Coria received a gash on the left side of her face. When they got home, Mrs. Coria ran inside to call 911, and the defendant got into his pickup truck and left. Tacoma Police Officer Wendy Haddow responded to the 911 call, reaching the Corias at 10:27 P.M.
Officer Haddow testified that when she arrived Mrs. Coria was crying, she had blood in her hair, and her face was swollen. She told Officer Haddow what happened. At the restaurant, the defendant became jealous because the waiters had been giving her too much attention. On the way home, the defendant drove to an empty parking lot. He slammed her face against his knee and the dashboard, punched her 10 times, and said that he would make sure no one would look at her again. She said she lost consciousness for a few minutes.
Officer Haddow called an ambulance for Mrs. Coria. At the hospital, Dr. Paul Hildebrand closed the gash on her face with six stitches. A CT scan revealed swelling on the right side of Mrs. Coria's head. Dr. Hildebrand testified that Mrs. Coria's injuries were consistent with her statements to police, including her reported loss of consciousness. Mrs. Coria's friend Debra Carrillo drove her home from the hospital around midnight.
The defendant got home later. Mrs. Coria ran to the neighbor's and called 911 again at 2:58 A.M. Again Officer Haddow responded (this time to the neighbor's) and again Mrs. Coria told her what happened. She said that she heard the defendant return and ran over to the neighbor's when she heard a loud banging noise coming from the garage. She said she went to the neighbor's because her neighbor had a big husband. She warned Officer Haddow not to try to arrest the defendant without backup because he was in a killing mood. But Officer Haddow was able to arrest the defendant, who was calm.
When Officer Haddow and Mrs. Coria returned to the house, it was a mess. A mirror was broken, the television was toppled over, the microwave was torn out of the wall, there were slashes in the kitchen linoleum, the couple's pet cockatiel was dead, and its cage was broken apart. When Officer Haddow came into the house, the Corias' three-year-old daughter pointed to the shattered mirror and said, "Daddy broke." 2 Report of Proceedings (RP) at 147. The exterior garage door was off its rollers, and the door leading from the garage into the house had been smashed in, its frame and lock broken. Officer Haddow estimated the damage around $620.
With the defendant in custody, Mrs. Coria obtained a protection order barring contact with her and their children. The defendant had several contacts with them before trial, but was not prosecuted for violating the order. He was charged with second degree assault, second degree malicious mischief, and willful killing of a pet. The corrected information alleged property damage in the approximate amount of $355. Clerk's Papers (CP) at 6-7.
In January 1999 Mrs. Coria recanted. She told the prosecutor and later testified that she became jealous in the restaurant because of the defendant's flirting. She lunged at him in the car. He pushed her away, and she hit her head on the ceiling and fell backwards, hitting her face on the dash. She denied being taken to the parking lot and losing consciousness. When they got home, to stop the defendant from leaving, she threatened to call 911 and lie to the police to get the defendant arrested. She broke the mirror in a "jealous rage," 1 RP at 108, and toppled over the television and the microwave. When the defendant returned they started to fight again, and she ran over to the neighbor's to force him not to leave, since he would not leave the children home alone. She said she called 911 from the neighbor's when she heard him banging on the garage.
The defendant testified that he dropped off his wife after fighting at the restaurant and *982 left. He said that the mirror was broken and the television was toppled over when he came back. They started arguing again and Mrs. Coria left. Then he went to see where she had gone, but locked himself out, and so broke in through the garage. He said the birdcage was knocked over during their fight, and that he accidentally hurt the bird when it got underfoot. The defense also presented Mrs. Coria's friend Debra Carrillo. She testified that in the car on the way home from the hospital Mrs. Coria told her that she had lied to the police in the first 911 call.
The jury found the defendant guilty of assault and malicious mischief, but could not reach a verdict on the count of willful killing of a pet. The Court of Appeals affirmed the assault conviction, but reversed the conviction for malicious mischief, based on the defendant's assertion that the items damaged were community property, and therefore not "property of another." We granted the state's petition for review.

ISSUE
Is community property co-owned and co-possessed by the defendant and his wife "property of another" for purposes of the crime of malicious mischief, RCW 9A.48.080(1)(a)?

ANALYSIS
We begin with the statute itself: a person commits malicious mischief in the second degree who knowingly and maliciously "[c]auses physical damage to the property of another in an amount exceeding two hundred fifty dollars." RCW 9A.48.080(1)(a). "Property of another" is not defined. The defendant argues that the definition of "property of another" must be understood from common law. This indicates, he says, that "property of another" does not include property in which the defendant has an equal equitable stake. Resp't's Suppl. Br. at 2-5. Thus, the defendant argues, the state's evidence was insufficient to support a conviction.
Clear statutory language must be afforded its plain meaning. In re Pers. Restraint of Long, 117 Wash.2d 292, 302, 815 P.2d 257 (1991). "When a statute is clear and unambiguous, its meaning is to be derived from the language of the statute alone and it is not subject to judicial construction." State v. Azpitarte, 140 Wash.2d 138, 141, 995 P.2d 31 (2000) (per curiam). "An ambiguity exists if the language at issue is susceptible to more than one reasonable interpretation." Id.
At least one court has observed that property owned jointly by defendant and victim is "property of another" as a "strictly literal" matter. People v. Brown, 185 Misc.2d 326, 333, 711 N.Y.S.2d 707 (N.Y.Crim.Ct.2000). It is beyond dispute that the items the defendant damaged were property, and that they belonged to Mrs. Coria, another person. Thus the defendant's conduct is squarely within the literal reach of the statute notwithstanding his interest in the property. Even the defendant does not argue that such a result is so absurd as to defeat literal enforcement of the law.
If there is any doubt about the meaning of "property of another," it is resolved by chapter 10.99 RCW, part of the legislature's official response to domestic violence. There we find explicit evidence of what conduct the legislature understands to be reached by the crime of malicious mischief. RCW 10.99.020(3)(m) specifically includes malicious mischief in the definition of "domestic violence" when committed by one family member against another. RCW 10.99.010 states that "it is the intent of the legislature that criminal laws be enforced without regard to whether the persons involved are or were married, cohabiting, or involved in a relationship." We are especially wary of permitting any domestic relationship to become a defense in criminal prosecutions.
Nevertheless, the defendant urges us to interpret "property of another" in the context of its meaning at common law, which supplements Washington penal statutes. RCW 9A.04.060. The defendant's argument is based on common law larceny. The general rule at common law was that one co-owner could not steal from another, since each co-owner is legally entitled to possession. See 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.4, at 355 (1986). The Court of Appeals' view was that *983 this rule determined the meaning of "property of another" absent legislative modification.
One such modification is RCW 9A.56.010(9), defining "owner" for purposes of theft as "a person, other than the actor, who has possession of or any other interest in the property or services involved, and without whose consent the actor has no authority to exert control over the property or services." Thus the court held in State v. Pike, 118 Wash.2d 585, 590, 826 P.2d 152 (1992), that a person with legal title to property could nevertheless steal it from a person with a superior possessory interest. In Pike, the defendant had taken his car from a mechanic. His conviction for theft was reversed, however, because the mechanic had not perfected his lien. Id. at 593, 826 P.2d 152.
Washington courts required legislative action to change the common law rule that a partner could not steal partnership property. State v. Eberhart, 106 Wash. 222, 225, 179 P. 853 (1919). The larceny statute at issue in Eberhart is substantially the same as RCW 9A.56.010(19)(b), defining "wrongfully obtains" as:
Having any property or services in one's possession, custody or control as bailee, factor, lessee, pledgee, renter, servant, attorney, agent, employee, ... to secrete, withhold, or appropriate the same....
Eberhart held that a partner's appropriation of partnership property was not a crime, since "partner" is not on the list, and since a prior statute repealed by the criminal code of 1909 had made it a crime. Eberhart, 106 Wash. at 225, 179 P. 853. This decision was reaffirmed by State v. Birch, 36 Wash.App. 405, 410, 675 P.2d 246 (1984). In response the legislature made it a crime for a partner to steal partnership property. Laws of 1986, Reg. Sess., ch. 257, § 2; RCW 9A.56.010(19)(c).
The Court of Appeals concluded from Pike and Eberhart that "property of another"for property crimes in generaldoes not include property in which the defendant has an ownership interest without legislative modification. The court said that by not including spouses on the list of persons who may commit theft, the legislature intended "that spouses who co-possess community property are not subject to crimes dealing with the property of another." State v. Coria, 105 Wash.App. 51, 59, 17 P.3d 1278 (2001). We do not believe that our decisions relating to theft require the same result in malicious mischief cases.
Division One of the Court of Appeals dealt with the same argument made here in State v. Webb, 64 Wash.App. 480, 489-91, 824 P.2d 1257 (1992). In Webb the defendant and his wife had separated and divided up their property; he was convicted of malicious mischief for breaking into her apartment and vandalizing her property. The court held that the defendant's community property was "property of another" under the malicious mischief statute. The court relied on Pike's holding that theft lies where the defendant may not exert control over property without the permission of another person. The court said that because the couple had separated, Webb's wife had a superior possessory interest in the property. Although Webb can be distinguished on this basis, the Webb court noted an important distinction between theft and malicious mischief: possession can be redeemed when property is stolen, but not when it is damaged or destroyed. Id. at 490, 824 P.2d 1257.
This distinction is important because damaging co-owned personal property is effectively like an ouster of other co-owners. The defendant's right to possess his community property is not a defense here, because his right was not exclusive of his wife's right to possession. Both spouses have undivided half interests in community property. Lyon v. Lyon, 100 Wash.2d 409, 413, 670 P.2d 272 (1983). The defendant's rights in their community property, as co-owner, do not include the right to infringe Mrs. Coria's. The Model Penal Code also recognizes that a defendant's property interest may not include the right to infringe others' rights. It defines "property of another" as "property `in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property.'" MODEL PENAL CODE § 220.3 cmt. 3, at 45 (1980).
*984 The dissent criticizes our reliance on chapter 10.99 RCW, and accepting the ambiguity hijacked from the common law of theft, would have us apply the rule of lenity. But RCW 10.99.020(3)(m) specifically references malicious mischief, which should be enough "persuasive authority" to apply it here. That statute does not refer to theft, undermining the dissent's view that one rule applies to all property crimes. Moreover, the rule of lenity does not preclude ordinary statutory construction. In re Pers. Restraint of Hopkins, 137 Wash.2d 897, 901, 976 P.2d 616 (1999) (applying rule of lenity after statutory construction); In re Pers. Restraint of Sietz, 124 Wash.2d 645, 652, 880 P.2d 34 (1994) (rule of lenity applies absent legislative intent to the contrary).
Most courts that have considered the issue agree with our decision. In State v. Superior Court, 188 Ariz. 372, 373, 936 P.2d 558 (Ct.App.1997), the court held that property in which the defendant held a joint tenancy with his wife was "property of another" for purposes of Arizona's criminal damage statute. The defendant had broken down the door to his and his wife's home and assaulted her. The court affirmed the conviction despite the couple's cohabitation and co-possession of the property.
This issue comes up more often in separation or dissolution cases, as in Webb. In People v. Kahanic, 196 Cal.App.3d 461, 241 Cal.Rptr. 722 (1987), the defendant, upon discovering her husband's Mercedes parked at another woman's house near the end of dissolution proceedings, threw a beer bottle through the rear window of the car. The court affirmed her vandalism conviction, saying:
It is of no consequence defendant wife may have had a community property right to share possession of the Mercedes.... The essence of the crime is in the physical acts against the ownership interest of another, even though that ownership is less than exclusive....
Id. at 466, 241 Cal.Rptr. 722 (citations omitted). This court thus felt that the defendant's own rights with respect to the property were irrelevant, since the gravamen of the crime is infringing another person's rights. Under Kahanic, malicious mischief lies in spite of the defendant's community property interest.
Iowa, Illinois and Minnesota have also held that co-owned property can serve as the basis for prosecution for property damage. State v. Zeien, 505 N.W.2d 498, 499 (Iowa 1993); People v. Schneider, 139 Ill.App.3d 222, 224-25, 93 Ill.Dec. 712, 487 N.E.2d 379 (1986); State v. Mayhood, 308 Minn. 259, 262-63, 241 N.W.2d 803 (1976). A contrary result was reached in People v. Person, 239 A.D.2d 612, 613, 658 N.Y.S.2d 372 (1997), but that decision has failed to persuade even lower courts in New York. People v. Kheyfets, 174 Misc.2d 516, 520-22, 665 N.Y.S.2d 802 (N.Y.Sup.Ct.1997) followed Person with a serious grudge and a call for legislative reversal. Brown, 185 Misc.2d at 333-34, 711 N.Y.S.2d 707, distinguished Person, stating outright that it was decided wrongly.
Because we hold that community property is "property of another" within the meaning of RCW 9A.48.080(1)(a), the evidence was sufficient to support the defendant's conviction. The evidence is sufficient "if, after it is viewed in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Randhawa, 133 Wash.2d 67, 73, 941 P.2d 661 (1997) (internal quotation marks omitted). The state was required to prove that the defendant caused physical damage in an amount exceeding $250. RCW 9A.48.080(1)(a).
The state presented Officer Haddow's testimony on the dollar value of the property damage and photographs of the damage. Officer Haddow estimated the total amount of damage at $620. Excluding the cost of the pet bird, since the jury did not reach a verdict on willful killing of a pet, the total amount of damage proved by the state is $555. The defendant relied on Mrs. Coria's testimony that the total repair cost of the damage was $67. On appeal, the defendant contends that no foundation was laid for Officer Haddow's expertise, nor for how she arrived at her figures. Appellant's Br. at 19. However, the defendant did not object to this *985 evidence at trial. The objection is therefore waived. State v. Newbern, 95 Wash.App. 277, 291, 975 P.2d 1041 (1999). Viewed most favorably to the prosecution, this evidence is sufficient to convince the jury beyond a reasonable doubt that the defendant did more than $250 worth of damage.
The concurrence invites us to address whether half or all the damage done to community property counts toward the degree of the offense. This issue was not raised by the parties. Contrary to what the concurrence claims, the defendant's challenge to the sufficiency of the evidence does not require us to resolve this question. The state's proof supports finding $555 worth of damage. Half of that is $277.50, which is still sufficient to support the conviction for second degree malicious mischief. It therefore makes no difference to the disposition of this case whether half or all the damage counts.
More importantly, resolution of this case does not require discussion of whether a community property interest is divisible. The recent community property cases on which the concurrence relies were based on a "landmark decision" that "signified a major departure" from prior authority. Haley v. Highland, 142 Wash.2d 135, 142, 12 P.3d 119 (2000); see Keene v. Edie, 131 Wash.2d 822, 935 P.2d 588 (1997). Haley and Keene were also based on careful analysis of policy considerations which had as much to do with principles of tort recovery as with domestic relations. Those cases demonstrate that we should not delve into unrelated aspects of community property law here, where we do not have the benefit of briefing by parties interested in the outcome. We accordingly decline to do so.

CONCLUSION
We conclude that the defendant's community property was "property of another" within the meaning of the crime of malicious mischief. We will not reconsider whether criminal prosecution is an appropriate response to domestic violence. A crime is not any the less because it is against a family member. This is not a case of one spouse cleaning the other's "junk" out of the garage, nor of venting anger on the nearest breakable furniture. The jury found that the defendant acted with malice. This element brings the defendant's violent conduct within reach of the criminal law. Our decision affects not only the prosecutor's power to bring a defendant to trial, but also the police department's power to come to a victim's aid. Mrs. Coria certainly sought help from the police that night, and we would be wary of a decision preventing them from giving it.
The law does not require such a decision. The defendant does not advance a construction of the meaning of "property of another" that would support reversal of his conviction. Its literal meaning is against him, since whether the defendant has an ownership interest in a piece of property is not relevant to the issue of whether another person does. Here another person did. Instead, the defendant argues that "property of another" is a term of art, drawn from the common law and retaining its common law meaning. The defendant's position is well argued, but unconvincing. First, chapter 10.99 RCW refutes the argument that the crime of malicious mischief is intended to refer to the common law. Second, the common law on which the defendant relies, the crime of larceny, is inapposite. This case deals with property damage. Malice for others has no place at home.
The Court of Appeals is reversed. The conviction for malicious mischief is affirmed.
WE CONCUR: ALEXANDER, C.J., SMITH, JOHNSON, IRELAND, BRIDGE, CHAMBERS, JJ.
MADSEN, J., (concurring).
While I agree with the majority that "property of another" includes the one-half interest of a spouse in community property, I write separately to make it clear that only the value of the victim's one-half interest in the community property may be considered when determining whether the evidence is sufficient to sustain a conviction for malicious mischief in the second degree.

Discussion
I agree with the majority that "property of another" includes the one-half interest of a *986 spouse in community property. Because "property of another" is not defined in RCW 9A.48.080, it makes sense to consult the domestic relations statutes to determine the nature of community property. RCW 26.16.030 provides, with certain exceptions, that property acquired after marriage is community property. See Dean v. Lehman, 143 Wash.2d 12, 18 P.3d 523 (2001); In re Marriage of Short, 71 Wash.App. 426, 859 P.2d 636 (1993), aff'd in part, rev'd in part, 125 Wash.2d 865, 890 P.2d 12 (1995). The spouse's interest involved in community property is "a present, undivided, fully vested, interest in each and every item of community property." 19 Kenneth W. Weber, Washington Practice: Family and Community Property Law § 8.4, at 124 (1997) (footnotes omitted). Additionally, each spouse is a one-half owner of community property. Bay Indus., Inc. v. Jefferson County, 33 Wash.App. 239, 653 P.2d 1355 (1982), superseded by statute on other grounds in Freeburg v. City of Seattle, 71 Wash.App. 367, 859 P.2d 610 (1993).[1] Recent cases demonstrate that a spouse's interest in community property is an ownership interest that can be divided under certain circumstances, even though the parties remain married. This court held that a victim of a separate tort may execute against the tort-feasor spouse's interest in community real property in the event that the offending spouse's separate property and share of personal community property are insufficient. Keene v. Edie, 131 Wash.2d 822, 935 P.2d 588 (1997). Further, this court construed RCW 26.16.200, the "marital bankruptcy statute," to provide that a spouse's interest in community could be used to satisfy a judgment arising from a premarital tort. Haley v. Highland, 142 Wash.2d 135, 12 P.3d 119 (2000).
Because under Washington law each spouse has a separate, one-half ownership interest in community property, it stands to reason that one-half of the property involved in this case is the "property of another." It is also clear that Mr. Coria had no right to destroy the property belonging to Ms. Coria as a matter of management or control. RCW 26.16.030(5) provides that
[n]either spouse shall ... sell, community household goods, furnishings, or appliances... unless the other spouse joins in executing the security agreement or bill of sale, if any.
"Household goods" generally refers to goods of a permanent nature, not consumed, and used by a person for his house or goods with which a residence is equipped, other than fixtures, and includes everything about the house that is usually held and enjoyed. Cooper's Mobile Homes, Inc. v. Simmons, 94 Wash.2d 321, 325, 617 P.2d 415 (1980). The purpose of the RCW 26.16.030 is to protect a nonsigning spouse from the "improvident transfer or encumbrance of the contents of the residence." 19 Kenneth W. Weber, Washington Practice: Family and Community Property Law § 12.13, at 220 (1997). The items of property allegedly damaged in this case fall into the category of household goods, furnishings, or appliances.
Taken as a whole, both statutory and case law establish that Ms. Coria has a one-half interest in the community property that was damaged and Mr. Coria had no authority to damage or destroy that property absent her agreement.
The discussion above is critical to the question of sufficiency of the evidence on the issue of property value. A spouse owns only one-half the value of community property. Her separate creditors can reach only her half of community property. She can devise or bequeath only one-half of the community property. RCW 26.16.030(1). A malicious mischief charge can only lie against the property of another. Accordingly, only one-half of the value can be used to support a conviction for malicious mischief when the property destroyed is community property.
*987 Unlike the majority, I believe that in determining whether the value of the property allegedly damaged is statutorily sufficient it is necessary to decide if the "property of another" is community property. If so, it is not enough to simply consider the whole value of the property because if, for example, the value is $400, then the value of the "property of another" is only $200, and thus, insufficient to support a conviction for malicious mischief in the second degree. In this case, I would affirm Mr. Coria's conviction because the State has met its burden of proof that the destruction of Ms. Coria's one-half of community exceeded $250.
ALEXANDER, C.J., concurs.
SANDERS, J., (dissenting).
The essential question here is one of straightforward statutory construction: Does "property of another" as used in RCW 9A.48.080, our second degree malicious mischief statute, encompass a defendant's community property he co-possesses?[1]

I.
I begin with the text of the statute itself. See State v. McDougal, 120 Wash.2d 334, 350, 841 P.2d 1232 (1992). The Washington statute defining second degree malicious mischief provides in relevant part:
A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously:
(a) Causes physical damage to the property of another in an amount exceeding two hundred fifty dollars....
RCW 9A.48.080(1) (emphasis added).
Our Legislature has not defined "property of another." Nor does legislative history offer us any aid. Although based on common law, the statute has its modern roots in the 1975 overhaul of our criminal code. Laws of 1975, 1st Ex.Sess., ch. 260.
When a statute does not define a term used at common law, courts must look to and apply the common law definition. See State v. Bash, 130 Wash.2d 594, 606-07, 925 P.2d 978 (1996); State v. Byrd, 125 Wash.2d 707, 712, 887 P.2d 396 (1995); State v. Scoby, 117 Wash.2d 55, 57, 810 P.2d 1358; 815 P.2d 1362 (1991); Peasley v. Puget Sound Tug & Barge Co., 13 Wash.2d 485, 504-05, 125 P.2d 681 (1942); N. Pac. Ry. Co. v. Henneford, 9 Wash.2d 18, 21, 113 P.2d 545 (1941); JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW § 3.02[B] (1995); 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.1 (1986). Indeed, unlike in most states, our Legislature expressly requires us to consider common law definitions of crimes to "supplement" Washington criminal statutes.[2] RCW 9A.04.060. Given the legislative silence on "property of another," we must look to the common law definition, if any.[3]
Malicious mischief was a misdemeanor at common law. See 4 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 485 (14th ed.1978); see also State v. Watts, 48 Ark. 56, 2 S.W. 342, 342-43 (1886) (citing BLACKSTONE'S COMMENTARIES and WHARTON'S CRIMINAL LAW). The common law crime was defined generally as the malicious injury or destruction of the property of another. 3 WILLIAM L. BURDICK, THE LAW OF CRIME § 778 (1946). The common law term "property of another" did not include property the defendant lawfully possessed. Id. Obviously, this would exclude a defendant's community property he co-possessed.
*988 This definition of "property of another" aptly coincides with other common law property crimes. For example, with respect to larceny at common law, Sir Matthew Hale stated it was no crime for a joint tenant or tenant in common to destroy property he and the other tenant co-own. 1 SIR MATTHEW HALE, HISTORIA Placitorum Coron: THE HISTORY OF THE PLEAS OF THE CROWN 513-14 (1736); SIR MATT HEW HALE, PLEAS OF THE CROWN: or, A METHODICAL SUMMARY OF THE PRINCIPAL MATTERS RELATING TO THAT SUBJECT 60-61, 65-68, 85 (1694) (stating no crime where man has property interest); see also State v. Larsen, 834 P.2d 586, 590 (Utah Ct.App.1992).
Similarly, at common law, partners or joint owners could not embezzle or steal partnership or jointly owned property. SANFORD H. KADISH & STEPHEN J. SCHULHOFER, CRIMINAL LAW AND ITS PROCESSES 1100 (6th ed.1995); DRESSLER, supra, § 32.06[B]; 2 LAFAVE & SCOTT, supra, § 8.4; 3 TORCIA, supra, § 419; see also State v. Eberhart, 106 Wash. 222, 224-26, 179 P. 853 (1919); State v. Sylvester, 516 N.W.2d 845, 846-47 (Iowa 1994); People v. Zinke, 76 N.Y.2d 8, 555 N.E.2d 263, 265, 556 N.Y.S.2d 11 (1990); People v. Clayton, 728 P.2d 723, 724 (Colo.1986); Babcock v. State, 91 Nev. 312, 535 P.2d 786, 786 (1975).
A husband and a wife were treated as one person for purposes of common law property crimes. 3 TORCIA, supra, §§ 335, 393, 419; see also State v. Mahaley, 122 N.C.App. 490, 470 S.E.2d 549, 550-51 (1996); State v. Dively, 431 N.E.2d 540, 541 (Ind.Ct.App.1982). Accordingly, "property of another" as used in common law property crimes did not include the marital property a spouse co-possessed. See, e.g., 3 TORCIA, supra, § 335 (burglary); § 350 (arson); § 393 (larceny); § 419 (embezzlement); § 446 (false pretenses); see also State v. Peck, 539 N.W.2d 170, 173 (Iowa 1995) (burglary); State v. Winkelmann, 761 S.W.2d 702, 706-07 (Mo.Ct.App.1988) (larceny); State v. Phillips, 85 Ohio St. 317, 97 N.E. 976, 976-77 (1912) (larceny). For example, a husband could not be convicted of common law arson for destroying the dwelling house he and his wife shared. 3 TORCIA, supra, § 350; see also State v. Denis, 304 A.2d 377, 382-83 (Me.1973).
This discussion leads to the inextricable conclusion that "property of another" at common law would not have included a defendant's own community property. Thus, when applying this common law definition to the case at hand, as we should until the Legislature says otherwise, Coria's conviction for malicious mischief cannot stand.

II.
In addition to considering the common law itself, the Court of Appeals also found relevant the history of our theft statute. See State v. Coria, 105 Wash.App. 51, 55-60, 17 P.3d 1278 (2001). I agree.
As mentioned above, it was traditionally not a crime for a partner to steal partnership property for it was not the "property of another." See supra Part I. This remained true even after the Legislature initially codified the common law. See, e.g., State v. Birch, 36 Wash.App. 405, 675 P.2d 246 (1984) (interpreting "property of another" as used in the then-current theft statute). Birch so held because the Legislature had the opportunity to amend the theft statute to include partnership property but did not. Id. at 411, 675 P.2d 246. It was only in response to Birch that the Legislature finally amended the statute to include theft of partnership property by a partner. See Laws of 1986, ch. 257, § 2.
While the Legislature modified the theft statute regarding partnership property, it has never done so for community property. I suppose then, absent future amendment, a spouse could not be convicted for "stealing" his or her own community property.[4]
Like the amendment to the theft statute covering theft of partnership property by partners, our Legislature could have amended the malicious mischief statute to include *989 the damage or destruction of the defendant's own community property. See Millay v. Cam, 135 Wash.2d 193, 202, 955 P.2d 791 (1998) (stating "[i]t is well settled that where the Legislature uses certain language in one instance but different, dissimilar language in another, a difference in legislative intent is presumed").[5]
Other state legislatures have enacted statutes that expressly govern damage or destruction of community property. For example, in Arizona, "property of another" is clearly defined in their malicious mischief statute to include "property in which any person other than the defendant has an interest, including community property and other property in which the defendant also has an interest." Ariz.Rev.Stat. § 13-1601(4) (West 2001) (emphasis added). In Alaska, "property of another" as used in all property crimes means, "property in which a person has an interest which the defendant is not privileged to infringe, whether or not the defendant also has an interest in the property and whether or not the person from whom the property was obtained or withheld also obtained the property unlawfully." Alaska Stat. § 11.46.990(13) (Lexis 2000).
In a similar vein, it is also striking our Legislature has chosen not to adopt the Model Penal Code's definition of "property of another" for purposes of property crime. We have stated that failure to include language from the Model Penal Code in a criminal statute evidences an intent that the statute's meaning differs from the Model Penal Code. See State v. Jackson, 137 Wash.2d 712, 723-24, 976 P.2d 1229 (1999). The Model Penal Code defines "property of another" generally to include, "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property." MODEL PENAL CODE § 223.0(7), at 125 (1980) (emphasis added); see also id. § 220.3 cmt. 3, at 44-45 (criminal mischief). If applicable, this definition would include Coria's community property. Under Jackson, however, we should not reach this result because our Legislature has chosen not to incorporate the Model Penal Code definition into the malicious mischief statute.
While the majority acknowledges the Model Penal Code definition of "property of another," as well as other states', see majority at 983 - 84, it fails to explain the simple fact our Legislature has chosen not to enact similar legislation. The majority must remember our duty not to reconstruct legislation it does not like, as we have a "long history of restraint in compensating for legislative omissions." Millay, 135 Wash.2d at 203, 955 P.2d 791; see also Dep't of Labor & Indus. v. Cook, 44 Wash.2d 671, 677, 269 P.2d 962 (1954) (stating "[t]he court cannot read into a statute anything which it may conceive that the legislature has unintentionally left out.").

III.
The Court of Appeals employed the rule of lenity as an alternative ground to reverse Coria's malicious mischief conviction. Coria, 105 Wash.App. at 60-62, 17 P.3d 1278. Our majority neglects to address this point. I opine the rule of lenity applies if there is doubt as to the meaning of this statute.
The rule of lenity requires ambiguity in the language of a criminal statute be resolved to favor the defendant. United States v. R.L.C., 503 U.S. 291, 305, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992); id. at 307-08, 112 S.Ct. 1329 (Scalia, J., concurring); United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); State v. Radan, 143 Wash.2d 323, 329-30, 21 P.3d 255 (2001); In re Pers. Restraint of Hopkins, 137 Wash.2d 897, 901, 976 P.2d 616 (1999); In re Pers. Restraint of Charles, 135 Wash.2d 239, 252, 955 P.2d 798 (1998).
The rule of lenity derives from both the doctrine of separation of powers and principles of due process of law. It is based in *990 part on separation of powers because it provides a clear guiding principle to both the judicial and legislative branches that the latter alone is the entity charged with defining crimes and punishments. See R.L.C., 503 U.S. at 309, 112 S.Ct. 1329 (Scalia, J., concurring); Bass, 404 U.S. at 348, 92 S.Ct. 515; United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820); Hopkins, 137 Wash.2d at 901, 976 P.2d 616; see also Brian Slocum, RICO and the Legislative Supremacy Approach to Federal Criminal Lawmaking, 31 Loy. U. Chi. L.J. 639, 662-67 (2000); Sarah Newland, The Mercy of Scalia: Statutory Construction and the Rule of Lenity, 29 Harv. C.R.-C.L. L.Rev. 197, 201 (1994).
To this end, the rule of lenity serves as a "nondelegation doctrine" which promotes democracy. Slocum, supra, at 664-65. As Justice Frankfurter commented:
In a democracy the legislative impulse and its expression should come from those popularly chosen to legislate, and equipped to devise policy, as courts are not. The pressure on legislatures to discharge their responsibility with care, understanding and imagination should be stiffened, not relaxed. Above all, they must not be encouraged in irresponsible or undisciplined use of language.
Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.Rev. 527, 545-46 (1947). As a result, the rule of lenity similarly acts as an incentive for legislatures to create clear criminal statutes. Slocum, supra, at 665-66.[6] Courts cannot do the legislature's work for it.
The rule of lenity also is a necessary outgrowth of due process. In McBoyle v. United States, Justice Holmes speaking for the Court stated:
a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.
283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931). The rule of lenity assures adequate notice, and thus due process concerning what conduct will be considered illegal, by requiring strict construction of penal statutes. Liparota v. United States, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); McBoyle, 283 U.S. at 27, 51 S.Ct. 340; see also R.L.C., 503 U.S. at 308-09, 112 S.Ct. 1329 (Scalia, J., concurring); Bass, 404 U.S. at 348, 92 S.Ct. 515; Wiltberger, 18 U.S. (5 Wheat.) at 95; Slocum, supra, at 662-63; Newland, supra, at 201-02; Cass R. Sunstein, Interpreting Statutes in the Regulatory State, 103 Harv. L.Rev. 405, 471 (1989).
This Court commonly, and recently, used the rule of lenity to interpret criminal statutes. See, e.g., Radan, 143 Wash.2d at 327-34, 21 P.3d 255; Hopkins, 137 Wash.2d at 900-01, 976 P.2d 616; Charles, 135 Wash.2d at 246-53, 955 P.2d 798. We apply the rule when the text of a statute is ambiguous. Radan, 143 Wash.2d at 329, 21 P.3d 255. Ambiguity exists if the statutory language is susceptible to more than one reasonable interpretation. Charles, 135 Wash.2d at 250, 955 P.2d 798. It must also be remembered the State bears the burden of establishing the narrower interpretation does not reasonably comport with the statute's text. United States v. Granderson, 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994); Slocum, supra, at 673-74; see id. at 674 n. 179 (noting that placing the burden on the State "comport[s] well with principles of due process and judicial restraint").
To be convicted of second degree malicious mischief in Washington a defendant must cause damage to "property of another," which is statutorily undefined. RCW 9A.48.080(1); see supra, Part I. Here, defendant Coria was convicted of damaging his own community property. If arguably *991 "property of another" could broadly mean the separate or community property of another, it is equally if not more reasonable to suppose "property of another" simply means, more narrowly, property the defendant does not own. This narrow interpretation would of course exclude Coria's community property.
The State does not address the ambiguity issue. It either neglects it outright, see Pet. for Review (failing to raise rule of lenity entirely) or assumes ambiguity and centers on various statutory construction theories to resolve it. See State's Suppl. Br. at 6-13. Therefore, in no way could one reasonably conclude the State met its burden of showing the narrow interpretation of "property of another" does not comport with the text of RCW 9A.48.080(1).
The majority unreflectively implies there is no textual ambiguity as applied to this case when it reasons, "[i]t is beyond dispute that the items the defendant damages were property, and that they belonged to Mrs. Coria, another person. Thus the defendant's conduct is squarely within the literal reach of the statute notwithstanding his interest in the property." Majority at 982. Of course, it is also beyond dispute that the items the defendant damaged belonged to the defendant as well, as he possesses a community property interest. It is precisely this ambiguity which warranted our review in the first place.
The majority also claims, "[i]f there is any doubt about the meaning of `property of another,' it is resolved by chapter 10.99 RCW, part of the legislature's official response to domestic violence." Majority at 982. However, I see no persuasive authority to resolve a textual ambiguity in our malicious mischief statute based solely on one portion of a different title of our state code, especially before looking to the common law or applying the rule of lenity. In any event, while the domestic violence statutes cited by the majority (RCW 10.99.020(3)(m) and RCW 10.99.010) suggest legislative intent that spouses do not have a get-out-of-jail-free card for malicious mischief crimes, this does nothing to answer the question whether "property of another" for malicious mischief purposes includes only the separate property of a spouse.
Moreover, by only looking to chapter 10.99, the majority ducks other statutes adverse to its position. For example, as the Court of Appeals noted, "the distinct history of Washington's theft statutes regarding `property of another' places the meaning of the same term in the malicious mischief statute in doubt." Coria, 105 Wash.App. at 60, 17 P.3d 1278. I agree. See supra, Part II. Such is also true when considering our community property law, which implies no criminal liability for damaging household personal community property. Id. If the majority sees fit to consider other areas of the code, why does it ignore these statutory considerations? At the very least, "property of another" is ambiguous.
Our case law remains unclear concerning whether the rule of lenity should be applied at this point in the interpretive process. While we have indicated we apply the rule of lenity as soon as we find textual ambiguity, see, e.g., Hopkins, 137 Wash.2d at 901, 976 P.2d 616, we have also stated we should first determine whether legislative history resolves the ambiguity, and only if it does not, do we then apply the rule of the lenity. See, e.g., Charles, 135 Wash.2d at 250 n. 4, 252, 955 P.2d 798.
I prefer the former approach. Applying the rule of lenity immediately after finding textual ambiguity better protects a defendant's constitutional right to adequate notice of the criminal laws and penalties, for it is only the statutory text itself that constitutes legislative criminal law. Moreover, when we apply the rule of lenity upon a finding of textual ambiguity only, we send a strong message to the Legislature to make sure it drafts clearer statutes. See R.L.C., 503 U.S. at 308-11, 112 S.Ct. 1329 (Scalia, J., concurring); Hughey v. United States, 495 U.S. 411, 422, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); Wiltberger, 18 U.S. (5 Wheat.) at 95-96; Slocum, supra, at 669-71; see also Newland, supra, at 200-19 (concluding the rule of lenity should serve as a background guiding *992 principle at all points in the process of interpreting criminal statutes).[7]
It is for the Legislature, not a majority of this Court, to define a statutory crime. When the Legislature fails to do so by drafting unclear penal laws, we must apply the rule of lenity, uphold the separation of powers, and protect the due process rights of the criminal defendant. I would apply the rule of lenity to Coria's advantage immediately upon finding ambiguity in the words "property of another" in RCW 9A.48.080. I therefore would hold "property of another" as used in the second degree malicious mischief statute does not encompass a defendant's own community property which he co-possesses.[8]

IV.
I am also persuaded "property of another" as used in the malicious mischief statute cannot include a defendant's community property under our community property law. A community property interest is "a present, undivided, fully vested, interest in each and every item of community property." 19 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 8.4 (1997) (footnotes omitted). Accordingly, each spouse "is considered to be a one-half owner thereof." Id.
By statute, each spouse has an equal right to individually manage and control community property. RCW 26.16.030. A spouse's authority to control community property is very extensive:
The sole management powers of a spouse are quite broad, including the right to determine the day to day use of community property, to contract in relation to community property, to purchase community property, to sell community property, to encumber community property, to trade community property, and to otherwise do that which an owner of property can do with that person's own property.

WEBER, supra, § 12.1 (footnote omitted) (emphasis added). This power extends to community personal property. Id. § 12.8 (noting until 1972 the husband retained sole management authority over community personal property).
RCW 26.16.030 contains six exceptions which prove the rule because none applies here. Section (1) pertains to devising or bequeathing by will; section (2) pertains to gifts; sections (3) and (4) pertain to real property; section (5) pertains to selling specific types of community personal property; and section (6) pertains to community business transactions. Nothing in this statute expressly prevents a spouse from destroying community personal property as part of the power of disposition, and certainly no exception suggests legislative intent to make the damaging of community personal property a crime.
*993 Our community property law makes sense. It does not create criminal liability for a spouse who dents the family car, breaks a window in the family house, or cracks the family china.
Recognizing this, the Court of Appeals refused to construe the "property of another" to include community property, explaining that it was "loath to take such a nebulous concept and reduce it, by judicial opinion, to a criminal rule." Coria, 105 Wash.App. at 58, 17 P.3d 1278 (quoting State v. Birch, 36 Wash.App. 405, 410, 675 P.2d 246 (1984)). The majority, having no such fear, rushes in, creating potential due process concerns in its wake.
Due process requires fair notice of proscribed criminal conduct and standards to prevent arbitrary enforcement. State v. Becker, 132 Wash.2d 54, 61, 935 P.2d 1321 (1997). RCW 9A.48.080 requires the State to prove the defendant "knowingly and maliciously" destroyed the property of another. Under the majority's interpretation, a defendant would be required to know in advance whether the property he or she destroyed was separate or community property.[9] Moreover, law enforcement would have to be able to make that distinction. As anyone familiar with marriage dissolution proceedings knows, the distinction between separate and community property is not always obvious. The majority's decision opens the door to insufficient notice and invites arbitrary enforcement.

V.
For the foregoing reasons, "property of another," as that term is used in our second degree malicious statute, does not encompass a defendant's own community property. Since it is undisputed Coria damaged only his own community property, and not the separate property of his wife, his conviction for malicious mischief must be vacated.
Accordingly I dissent.
NOTES
[1] In Bay Industry v. Jefferson County, 33 Wash. App. 239, 653 P.2d 1355 (1982), the appellant argued that the freeholder requirement of RCW 36.87.020 was violated because only five married couples had signed a road vacation petition. Appellants contended that each married couple constituted only one freeholder. The court disagreed, reasoning that each spouse in a marital community is a property owner and the definition of freeholder is one who holds legal or equitable title to real estate. Id. at 241, 653 P.2d 1355.
[1] This question has nothing to do with domestic violence although the majority seems confused on this point.
[2] It is no excuse that the members of our majority have not truly digested this statute. On the second floor of our own courthouse, we display an exhibit-panel about the common law, one which majority signatories walk by almost everyday. It proudly states, "The Washington Legislature adopted the Common Law of England in 1891," citing to section 1, chapter 17 of the Code of 1891 which provides the common law shall be the "rule of decision" when not inconsistent with state and federal law. This statute is alive and kicking today. See RCW 4.04.010.
[3] Looking to the common law also makes sense because it appears one of our first general malicious mischief statutes was expressly based on the common law. See McLaughlin's Code of 1896, § 6228 (citing to "HPC"). "HPC" refers either to Hale's or Hawkins' Pleas of the Crown, the common law of England. See MARY MILES PRINCE, BIEBER'S DICTIONARY OF LEGAL ABBREVIATIONS 339 (4th ed. 1993).
[4] This Court has held, based on the statutory definition of "owner," that theft can occur when a defendant, even with title, takes the property from another with a superior possessory interest. State v. Pike, 118 Wash.2d 585, 590, 826 P.2d 152 (1992). This, of course, is irrelevant here where neither Coria nor his wife has a superior possessory interest. In any event, the Pike court rested its decision on express statutory authorityunlike our majority.
[5] The majority responds by claiming theft and malicious mischief are significantly distinct because "possession can be redeemed when property is stolen, but not when it is damaged or destroyed." Majority at 983. However, this is plainly wrong. Possession sometimes cannot be redeemed after property is stolen, and possession sometimes may be redeemed when property is merely damaged.
[6] Similar is our requirement to strictly construe criminal statutes. On this we have stated, "`[i]t is a familiar rule of statutory construction ... that a criminal statute will not be extended beyond its plain terms by construction or implication.'" Marble v. Clein, 55 Wash.2d 315, 317, 347 P.2d 830 (1959) (quoting State v. Youngbluth, 60 Wash. 383, 384, 111 P. 240 (1910)). Courts strictly construe statutes by choosing a narrow construction over a broad one. State ex rel. McDonald v. Whatcom County District Court, 19 Wash.App. 429, 431, 575 P.2d 1094 (1978); see also State v. Eden, 92 Wash. 1, 7, 158 P. 967 (1916).
[7] Even if we were to consider legislative history before applying the rule of lenity in this case, that would not resolve the textual ambiguity in our second degree malicious mischief statute. See supra Part I.
[8] A procedural note: The State failed to properly raise the rule of lenity issue for our review. We only review questions raised in the petition for review and answer, unless we order otherwise. RAP 13.7(b). Issues are properly raised according to RAP 13.4(c)(5), which requires, "[a] concise statement of the issues presented for review" set forth with "specificity." See State v. Collins, 121 Wash.2d 168, 178, 847 P.2d 919 (1993) (citing Clam Shacks of Am., Inc. v. Skagit County, 109 Wash.2d 91, 98, 743 P.2d 265 (1987)). We decline to review portions of Court of Appeals decisions when the petition or answer fails to clearly state the issues for review pertaining to these portions. See, e.g., Collins, 121 Wash.2d at 178-79, 847 P.2d 919; Douglas v. Freeman, 117 Wash.2d 242, 257-58, 814 P.2d 1160 (1991); Clam Shacks, 109 Wash.2d at 98, 743 P.2d 265. It does not suffice the issues were raised in the petition's argument section, reply briefs, or supplemental briefs. Collins, 121 Wash.2d at 178-79, 847 P.2d 919; Clam Shacks, 109 Wash.2d at 98, 743 P.2d 265; see also Douglas, 117 Wash.2d at 257-58, 814 P.2d 1160. Here, the Court of Appeals reversed Coria's malicious mischief conviction alternatively on rule of lenity grounds. Coria, 105 Wash.App. at 60-62, 17 P.3d 1278. The State failed to seek review of this portion of the decision as it did not properly set forth the rule of lenity issue for review in its petition. See Pet. for Review at 1-2. The State only addressed the issue specifically in a supplemental brief filed after we already accepted review. See State's Suppl. Br. at 8-9. Therefore, under RAP 13.4(c)(5), 13.7(b), and its interpretive case law, the Court of Appeals decision to reverse Coria's conviction on rule of lenity grounds should still stand.
[9] This issue was not raised here, and Coria freely admits on appeal the property was community in nature.