# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60898-7-II |
| Respondent, | |
| v. | |
| ANGELA FRANCES WELLS PALMER, | UNPUBLISHED OPINION |
| Appellant. | |

Veljacic, C.J. — Angela Frances Wells Palmer appeals her conviction for one count of malicious mischief in the second degree. Wells Palmer raises two arguments on appeal. First, Wells Palmer argues that insufficient evidence supports her conviction. Second, Wells Palmer argues she received ineffective assistance of counsel because defense counsel did not object to the admission of hearsay testimony at trial. We conclude that Wells Palmer's conviction is supported by sufficient evidence. But because we conclude that Wells Palmer received ineffective assistance of counsel, we reverse her conviction and remand for a new trial.

FACTS

I.     BACKGROUND

Richard Palmer and Wells Palmer were married 32 years. They lived together in Ariel at a home they jointly owned. Both Palmer and Wells Palmer were listed on the deed to the house.

On November 5, 2019, the parties legally separated and Wells Palmer filed for divorce. In light of their pending divorce, Palmer moved out.

In 2021, Palmer and Wells Palmer entered into a separation agreement. The agreement dictated that Palmer would stay at the residence in Ariel. Pursuant to the agreement, Wells Palmer moved out, leaving her keys behind, and Palmer moved in on October 31.

II.     THE INCIDENT

On May 23, 2022, Wells Palmer went back to the residence in Ariel. Wells Palmer was "beating on [the] windows and . . . front door." Rep. of Proc. (RP) at 207. Palmer, armed with a gun,[1] went to the front door and yelled "Who's out there?" RP at 207. When Palmer realized it was Wells Palmer, he "opened the door" and told her to "[g]et off [his] porch because she didn't belong there." RP at 207-08.

Wells Palmer did not leave. Wells Palmer "went into the shed and got [a] sledgehammer," and she proceeded to pound on the door, breaking the handle and the locks. RP at 332. Then, Wells Palmer smashed one of the windows and shattered the "sliding glass door in the back of the house." RP at 208.

Palmer called 911 while Wells Palmer was damaging the house. Palmer requested the officers come out and remove Wells Palmer from the property.[2] After Wells Palmer broke the sliding glass door, she put down the sledgehammer and entered the house. Upon doing so, Wells Palmer cut herself and she got blood on the wall and the carpet.

During this time, the 911 operator stayed on the line with Palmer. In the background, Wells Palmer could be heard saying, "It's my house, I'm not leaving," and she was "screaming belligerently." RP at 226, 233. There is conflicting testimony whether Palmer pointed the gun

---

[1] Palmer testified at trial that he had his gun because he "live[d] by [himself] out in the middle of nowhere." RP at 218.

[2] At the time of the incident, Palmer and Wells Palmer were not officially divorced because Wells Palmer had not completed the paperwork.

and/or threatened Wells Palmer, but he ultimately put the gun in a safe at the request of the 911 operator.

Cowlitz County Sheriff's Office Detective Christopher Moore and Deputy Kelly Pattison arrived at the residence approximately 20 to 30 minutes after the 911 call. Pattison observed that the front door "was all busted up," the sliding glass door was gone, and the window was broken. RP at 239. When Pattison talked with Wells Palmer, she told Pattison that "Palmer would not let her in, so she made her way in with the sledgehammer." RP at 241. Moore made similar observations regarding the extent of the damage.

Wells Palmer was taken into custody and was charged with one count of residential burglary (domestic violence) and one count of malicious mischief in the second degree (domestic violence).

III.    WELLS PALMER'S TRIAL

At trial, Palmer testified that he had to board up the sliding glass door and window with plywood. Palmer also had to "put a foot lock[er] on the front door" because the front door could not be shut and locked. RP at 210. When asked how much it was going to cost to repair the damage, Palmer testified that the "*estimate [he] got was* [for] approximately $9,500." RP at 211. Defense counsel did not object to this testimony.

After the State rested its case, Wells Palmer moved to dismiss both charges. The trial court denied the motion, reasoning that there was enough evidence for the case to go to the jury.

The jury found Wells Palmer not guilty for the one count of residential burglary, and it found her guilty of malicious mischief in the second degree. The jury found the one count of malicious mischief in the second degree was a crime of domestic violence. The trial court

subsequently sentenced Wells Palmer to 10 days of confinement and 72 hours of community restitution. The trial court also ordered Wells Palmer to pay $10,181.36 in restitution.

Wells Palmer appeals.

## ANALYSIS

I.     SUFFICIENT EVIDENCE SUPPORTS WELLS PALMER'S CONVICTION

Wells Palmer argues that insufficient evidence supports her conviction because the State relied "solely on the hearsay testimony of . . . Palmer to prove that he was an owner of the property . . . and that the damage caused by [Wells Palmer] exceeded [$750]." Br. of Appellant at 9. We disagree.

To satisfy due process, the State must prove every element of the crimes charged beyond a reasonable doubt. *State v. Smith*, 155 Wn.2d 496, 502, 120 P.3d 559 (2005). The test for determining the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found [the defendant] guilt[y] beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Under a sufficiency challenge, our review is "highly deferential to the jury's decision" because "questions of credibility, persuasiveness, and conflicting testimony must be left to the jury." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014); *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). A defendant challenging the sufficiency of the evidence admits "the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). Therefore, we must draw "all reasonable inferences from the evidence in favor of the State and against the defendant." *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024).

4

When we evaluate the sufficiency of the evidence supporting a conviction, we consider circumstantial evidence to be as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980); *see also O'Neal*, 159 Wn.2d at 506 ("Direct evidence is not required to uphold a jury's verdict; circumstantial evidence can be sufficient."). "[E]ven if the only evidence of guilt is circumstantial, the jury need only be convinced of guilt beyond a reasonable doubt." *State v. Couch*, 44 Wn. App. 26, 30, 720 P.2d 1387 (1986).

"A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously . . . [c]auses physical damage to *the property of another* in an amount exceeding [$750]." RCW 9A.48.080(1)(a) (emphasis added).[3] For the purpose of determining the degree of malicious mischief, "damages," in addition to its ordinary meaning, "includes any diminution in the value of any property as the consequence of an act." RCW 9A.48.100; *State v. Gilbert*, 79 Wn. App. 383, 385, 902 P.2d 182 (1995). The ordinary meaning of damages includes the reasonable cost of repairs to restore injured property to its former condition. *Gilbert*, 79 Wn. App. at 385.

A.      Palmer's Ownership of the Residence

At the outset, Wells Palmer claims that the State failed to establish that she damaged the "property of another" because she co-owned the home with Palmer. Br. of Appellant at 11. To that end, Wells Palmer cites to several cases that purportedly stand for the proposition the State needed to introduce "[e]vidence corroborating [Palmer's] claim of interest[,] such as . . . the separation agreement."[4] Br. of Appellant at 11.

---

[3] On appeal, Wells Palmer does not challenge that she "knowingly and maliciously" damaged the property. RCW 9A.48.080(1)(a) (emphasis added).

[4] Wells Palmer relies on: *State v. Pike*, 118 Wn.2d 585, 826 P.2d 152 (1992); *State v. Lee*, 128 Wn.2d 151, 904 P.2d 1143 (1995); *State v. Wooten*, 178 Wn.2d 890, 312 P.3d 41 (2013); *State v. Newcomb*, 160 Wn. App. 184, 246 P.3d 1286 (2001).

Even if we were to assume that Wells Palmer co-owned the house with Palmer because they were still married at the time of the incident, her reliance on these cases is misplaced. In *State v. Coria*, 146 Wn.2d 631, 633-34, 48 P.3d 980 (2002), our Supreme Court addressed a similar situation like the case at bar. There, the defendant, who lived with his wife and daughter, damaged their home after getting into an argument with his wife. *Id.* Coria broke a mirror, threw over a television, tore a microwave out of the wall, slashed "the kitchen linoleum," killed the family's pet cockatiel, and "smashed in . . . the door leading from the garage into the house." *Id.* at 634. A jury convicted Coria of assault in the second degree and malicious mischief in the second degree. *Id.* at 635.

On appeal, Coria argued that insufficient evidence supported his conviction because he did not damage "property of another" since he was married to his wife and had "an equal equitable stake" in their property. *Id.* at 636. Our Supreme Court disagreed. The court explained that "[b]oth spouses have undivided half interests in community property." *Id.* at 639. Consequently, the court concluded that Coria's "right to possess his community property [was] not a defense. . . because his right was not exclusive of his wife's right to possession." *Id.*

Here, Because Palmer, at a minimum,[5] had an "undivided half interest[]" in the home, a jury could have found beyond a reasonable doubt that Wells Palmer damaged the "property of another." *Id.*; RCW 9A.48.080(1)(a). Wells Palmer's argument fails.

---

[5] Wells Palmer's argument would also fail if, on the other hand, Palmer had exclusive possession of the home because of their agreement. *See State v. Webb*, 64 Wn. App. 480, 490-91, 824 P.2d 1257 (1992).

B.      Damages Exceeding $750

Next, Wells Palmer argues that the State failed to establish that she caused damage exceeding $750. Wells Palmer cites to *State v. Claybourne*, 14 Wn. App. 314, 315, 541 P.2d 1230 (1972), for the proposition that "proof of damage alone is not sufficient to prove the actual amount of damage sustained." Br. of Appellant at 16. *Coria* likewise forecloses this argument.

In *Coria*, the defendant also challenged the basis on which the officer provided their estimate of damages. 146 Wn.2d at 640-41. At trial, an officer "estimated the damage [to be] around $620." *Id.* at 634. There was no other evidence presented at trial corroborating the officer's estimate. *Id.*

Despite there being no other corroborating evidence, our Supreme Court concluded that the evidence was "sufficient to convince the jury beyond a reasonable doubt that the defendant did more than $250 worth of damage." *Id.* at 641.[6] Wells Palmer's argument requiring corroborative evidence fails.

Here, like in *Coria*, Palmer's admitted testimony[7] regarding the damage was sufficient to support that the damages exceeded $750. At trial, Palmer testified that he obtained an estimate for "approximately $9,500," well above what is required for a conviction of malicious mischief in the second degree. RP at 211; RCW 9A.48.080(1)(a).

---

[6] RCW 9A.48.080(1)(a) has since been amended to increase the value of the damage caused by a defendant from $250 to $750. Former RCW 9A.48.080(1)(a) (2009).

[7] This testimony was not objected to at trial. Consequently, any alleged error unpreserved, and we will not review for the first time on appeal for Wells Palmer's sufficiency of the evidence challenge. *E.g.*, *State v. Perez-Cervantes*, 141 Wn.2d 468, 482, 6 P.3d 1160 (2000) (explaining that a defendant may not argue the erroneous admission of hearsay at trial on for the first time on appeal under RAP 2.5(a)).

Therefore, we conclude that when viewing the evidence in the light most favorable to the State, a rational trier of fact could have found Wells Palmer guilty of malicious mischief in the second degree.

II.    WELLS PALMER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

Wells Palmer argues that she received ineffective assistance of counsel because defense counsel "failed to object to hearsay statements . . . about damages and ownership of the property." Br. of Appellant at 18.  We agree, in part.[8]

Criminal defendants have a right to effective assistance of counsel.  U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22.

To prove ineffective assistance of counsel, a defendant must show (1) counsel's representation was so deficient it fell "below an objective standard of reasonableness" and (2) that deficiency prejudiced the defendant.  *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  Failure to satisfy either requirement defeats the claim.  *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024).

To show ineffective assistance of counsel for failure to object, "a defendant must [first] show that an objection would likely have been sustained."  *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).  "The defendant must overcome 'a strong presumption that counsel's performance was reasonable.'"  *Bertrand*, 3 Wn.3d at 130 (quoting *State v. Kyllo*, 166

---

[8] In Wells Palmer's brief, she appears to claim that defense counsel's failure to object to any testimony regarding "ownership of the property" prejudiced her.  Br. of Appellant at 18.  We surmise Wells Palmer is referencing testimony regarding the separation agreement, but she does not elaborate further in the body of her brief.  Again, our discussion above regarding *Coria* forecloses the notion that Wells Palmer could be prejudiced by the admission of such testimony. 146 Wn.2d at 636-39.

Wn.2d 856, 862, 215 P.3d 177 (2009)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in the light of all the circumstances." *State v. Stotts*, 26 Wn. App. 2d 154, 165, 527 P.3d 842 (2023).

Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *Kyllo*, 166 Wn.2d at 863. A "defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). When "inadmissible evidence is significant to the State's case, either in quantity or in quality, *there is generally no legitimate reason for failing to object*." *Stotts*, 26 Wn. App. 2d at 166 (emphasis added); *State v. Vazquez*, 198 Wn.2d 239, 248-49, 494 P.3d 424 (2021).

Second, prejudice requires showing that, but for counsel's deficient performance, "there is a reasonable probability . . . the result of the proceeding would have differed." *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (quoting *Strickland*, 466 U.S. at 694).

A.     Deficiency

At issue here is Palmer's testimony regarding the dollar amount associated with the damages caused by Wells Palmer. At trial, Palmer testified that the "*estimate [he] got was* [for] approximately $9,500." RP at 211 (emphasis added). Had counsel objected, the trial court would have likely sustained an objection because the testimony is hearsay.

"'Hearsay' is a statement" made by a declarant outside of court that is being "offered [into] evidence to prove the truth of the matter asserted." ER 801(c). Absent an exception, "[h]earsay is not admissible." ER 802.

Palmer's testimony suggests that, unlike *Coria,* the amount introduced at trial was not Palmer's estimate. 146 Wn.2d at 634 (explaining that the testifying officer "estimated the damage around $620").[9] Instead, his testimony suggests that the estimate was from a company and/or person that provided an estimate for repairs, which was based on *their* assessment of the damages. The estimate is a statement that was made outside of court that was offered by the State, through Palmer, to be admitted for the truth of the matter asserted, *i.e.*, that the damages exceeded $750. Had defense counsel objected, the trial court would have likely sustained an objection. Moreover, the State does not identify any applicable hearsay exception that would have rendered Palmer's testimony admissible.

Defense counsel's failure to object to the admission of this testimony cannot be characterized as a strategic decision because Palmer's testimony focused on an important element of the offense. *Stotts*, 26 Wn. App. 2d at 166. As explained in *State v. Timothy K.*, 107 Wn. App. 784, 789, 27 P.3d 1263 (2001), "[t]he sum of the damage caused is precisely what determines the degree of [malicious mischief], and for that reason[, it] is a true element that must be proved beyond a reasonable doubt."

Therefore, we conclude that defense counsel's performance was deficient.

---

[9] The State relies on *State v. Hammond*, 6 Wn. App. 459, 493 P.2d 1249 (1972), for the proposition that a property owner can testify to the value of their property. We do not disagree with the holding in *Hammond*, but the case before us is a different situation. When carefully reading Palmer's testimony, it is clear that his testimony is not his own determination of the value associated with the damages of his property. Palmer is instead providing the estimate of another person. And Palmer did not further elaborate on whether the estimate was an accurate valuation of the damages based on his personal knowledge of his property.

B.      Prejudice

Wells Palmer was prejudiced by defense counsel's failure to object to the admission of Palmer's testimony.  Critically, Palmer's testimony is the *only* evidence admitted at trial regarding the actual dollar value of the damages caused by Wells Palmer from which the jury can infer diminution in value.  Defense counsel's failure to object to the only evidence of value admitted at trial, where the objection would likely have been granted, was the difference between a misdemeanor and a felony; the prejudice to the outcome is apparent.

As previously discussed, in *Coria*, our Supreme Court concluded that sufficient evidence supported the defendant's conviction for malicious mischief in the second degree.  146 Wn.2d at 641.  The court's analysis regarding "the dollar value of the property damage" focused *entirely* on "Officer Haddow's testimony," who "estimated the total amount of damage at $620." *Id.*  Nowhere in *Coria* did our Supreme Court explain that the jury could speculate to the dollar value of damages in the absence of such evidence. *Id.*  Here, the State similarly cites to no authority for such a proposition. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Therefore, we conclude that Wells Palmer has met her burden in establishing that she received ineffective assistance of counsel, and she is entitled to a new trial.

CONCLUSION

Accordingly, we reverse Wells Palmer's conviction and remand for a new trial.

11

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic C.J.

We concur:

_____
Maxa, J.

_____
Price, J.