OPINION OF THE COURT
Ethan Greenberg, J.
The relatively simple facts developed in the course of a brief bench trial in this case raise two surprisingly complex and interesting legal questions.
First, is the defendant in a prosecution for unauthorized use of a vehicle, like the defendant in a traditional larceny prosecution, entitled to assert as a defense that he acted under a good-faith claim of right?
Second, can a defendant properly be charged with the crime of criminal mischief for deliberately destroying property— namely, a car — where defendant genuinely believed in good faith that he was entitled to share the use of that car with the car’s legal owner?
For the reasons detailed below, the court answers both these questions in the affirmative and therefore finds the defendant not guilty of attempted unauthorized use of a vehicle, but guilty of attempted criminal mischief. An analysis of the criminal mischief charge and the facts of this case also leads the court to conclude that there is good reason to re-examine the rule of People v Person (239 AD2d 612 [2d Dept 1997]) which places severe, and in this court’s view, unwarranted restrictions on prosecutions for criminal mischief in cases involving domestic violence.
*328 Facts
This case grows out of a quarrel over an automobile between the defendant Leroy Brown and his estranged former lover Lisa Lindo.
The largely undisputed facts developed in the course of the trial herein were as follows. Defendant and Ms. Lindo lived together for a time, and they remained on friendly terms even after they took up separate residences. They decided to buy a car. The defendant made the initial down payment for the car of about $6,000. Legal title to the car was placed in the name of the complainant Ms. Lindo and of her father (who graciously agreed to cosign for the car loan).
For several months Mr. Brown and Ms. Lindo shared the car amiably and without incident. Then defendant Brown fell behind in making payments on the car, and the quarrel over the car began to develop. Things got so bad that one night, several months before the incident in question, the complainant Ms. Lindo traveled from her home in the Bronx to defendant’s neighborhood in Brooklyn and simply took the car off the street, without any notice to the defendant. Thereafter she kept the car herself.
On the day in question, October 18, 1998, relations between Ms. Lindo and Mr. Brown were apparently somewhat friendlier. Ms. Lindo drove defendant from Brooklyn to the Bronx. But Mr. Brown and Ms. 'Lindo began to argue again while standing on the sidewalk in the Bronx. The argument touched upon many sore topics, including the car. After several minutes of quarreling, defendant Brown got into the driver’s seat of the car and prepared .to drive away. Complainant Lindo jumped into the car’s back seat and continued the argument.
Defendant began to drive with Ms. Lindo in the back seat. They proceeded for several blocks. Finally, in a fit of anger, defendant Brown declared “If I can’t have the car, then no one can” and wrecked the car by deliberately driving it into a light pole. Defendant Brown quickly fled the scene, but was ultimately arrested and now stands charged with attempted unauthorized use of a vehicle in the third degree (in violation of Penal Law §§ 110.00, 165.05 [1]) and attempted criminal mischief in the fourth degree (Penal Law §§ 110.00, 145.00 [1]).
The car (which was not insured) requires very expensive repairs. Neither the defendant nor Ms. Lindo has been willing or able to pay for those repairs. Thus Ms. Lindo’s father — a decent, hard-working man whose only mistake was to trust his *329 daughter and her friend Mr. Brown to act responsibly — has been saddled with making monthly payments for a wrecked and useless car since September 1998.
The testimony of the complainant Ms. Lindo — the People’s chief witness at trial — demonstrated that there was and is a genuine dispute between the complainant and defendant Brown about who owned the car and who was entitled to use it.
Complainant’s and defendant’s positions can be restated (in somewhat more formal legal language than they themselves employed) as follows. Complainant Lindo took the view that defendant made the initial down payment (and several subsequent monthly payments) on the car as a gift to her, and that she was the sole owner of the car. In the complainant’s view, complainant consented of her own free will to permit the defendant to occasionally use the car for several months following the purchase of the car, but she then withdrew that consent after they quarreled about several issues, including defendant’s failure to keep up payments on the car. Once complainant Lindo withdrew that consent, she believed that defendant had no right to take, use or damage the car.
Defendant Brown, for his part, took the view that he made the very substantial initial down payment (and several subsequent monthly payments) on the car not as an outright gift to Ms. Lindo, but as an act pursuant to an informal agreement with complainant Lindo whereby they would share the use of the car. Defendant’s understanding was that he and Ms. Lindo had agreed that Ms. Lindo (along with her father) would be the legal titleholders to the car, but that defendant retained the right to use the car from time to time and that Ms. Lindo was therefore required to share the car with him. In defendant’s view the complainant had no right to unilaterally declare that defendant — who had paid for the car in the first place — could no longer use the car at all. Thus, at least in his own mind, defendant was not stealing Ms. Lindo’s car on the day in question; rather defendant believed that he was entitled to drive the car from time to time, and that Ms. Lindo was obligated to share it.
Analysis
At the outset, it should be noted that based on the evidence presented at trial it certainly appears that defendant was guilty of a number of charges that were not brought by the People, including: (1) reckless endangerment (Penal Law *330 § 120.20) (for deliberately causing a car wreck while he and complainant were still in the car); (2) leaving the scene of an incident (Vehicle and Traffic Law § 600); (3) driving with a suspended license (Vehicle and Traffic Law § 511); and (4) criminal mischief in the fourth degree (Penal Law § 145.00) (for damaging the light pole, which belongs to the City). The District Attorney’s office has, however, elected to focus solely on two property crimes allegedly committed against the complainant Ms. Lindo, namely, unauthorized use and criminal mischief.
In a case like this, where there was a genuine dispute over the property in question, the prosecution of those property crimes raises the concern that an essentially civil dispute over the ownership and use of a car should not be elevated into a criminal prosecution. (See, People v Zinke, 76 NY2d 8, 13 [1990].)
As detailed below, the law is not fully settled on the question whether a person claiming to be an equitable co-owner of property can be charged with either unauthorized use or criminal mischief. The law is a bit clearer with respect to the closely related crime of larceny. An examination of the law regarding larceny is therefore a useful starting point for analysis here.
A. Larceny
The general rule in New York (and elsewhere) is that a joint or common owner of property cannot be guilty of larceny for taking commonly held property. He may be liable for civil damages for conversion or the like, but he is not criminally liable. (People v Zinke, supra.)
This long-standing common-law rule[1] is built into the definitional section of article 155 of the Penal Law, which governs larceny. Larceny is defined as wrongfully taking property from an “owner” (Penal Law § 155.05), and an “owner” is defined as anyone with right of possession superior to that of the taker (Penal Law § 155.00 [5]). Penal Law § 155.00 (5) further provides, however, that a joint or common owner shall not be deemed to have a right of possession superior to that of any other common owner. Thus where one co-owner takes property from another co-owner, neither person is an “owner” for purposes of the larceny statute and, accordingly, neither one *331 can be charged with larceny. (See, People v Kheyfets, 174 Misc 2d 516, 519 [Sup Ct, Kings County 1997] [“Thus, if property owned by two or more people is taken by one owner, he or she cannot be convicted of larceny. The principle behind this rule is that if one is an owner of property and entitled to possession at the time of the taking, there can be no larceny”].)
Moreover, even where a defendant is not in fact a co-owner of property, but takes the property under a claim of right made in good faith, defendant is not guilty of larceny. That is so because in such a case defendant lacks the intent to steal. (See, People v Reid, 69 NY2d 469 [1987]; People v Chester, 50 NY2d 203 [1980]; Penal Law § 155.15 [1].)
Thus, under the facts of the present case, defendant Brown could not be convicted of larceny. To begin with, defendant acted under a good-faith claim of right in that, even according to the complainant, defendant Brown genuinely believed he had a right to use the car. That belief had a reasonable, good-faith basis in that defendant had paid for the car in the first instance and had driven it for many months with the complainant’s consent. Thus defendant’s intention was not to steal, but merely to use a car that he believed, with at least colorable justification, he had every right to use.
The same result might also be justified by reference to the Penal Law’s definition of “owner.” That is to say, if defendant had been charged with larceny then he might well have argued that he regarded himself as, in essence, an equitable co-owner of the car along with Ms. Lindo. Under this theory, defendant would have asserted that he could not and did not consciously intend to deprive the “owner” of the car because defendant sincerely and reasonably believed that he and Ms. Lindo were co-owners of the car; defendant would then argue that as a consequence neither was an “owner” of the car within the specialized definition of “owner” set out in Penal Law § 155.00 (5) because that definition provides that neither co-owner can have a right of possession “superior” to the other’s.
Accordingly, had the People chosen to bring a charge of larceny against defendant Brown, the verdict would have been not guilty.
B. Unauthorized Use of a Vehicle
For essentially the same reasons the court finds that defendant is not guilty of the charge of attempted unauthorized use of a vehicle that was brought by the People.
The unauthorized use statute (Penal Law § 165.05) is in essence a kind of larceny statute specially adapted for car theft. *332 The unauthorized use statute applies where a defendant takes a car for a “joyride” — that is, where the defendant takes or uses a car, however briefly, knowing that he does not have the consent of the car’s owner. Unauthorized use differs from classical larceny chiefly in that the crime of unauthorized use can be committed even where defendant does not intend to permanently deprive the owner of the car; it is sufficient that defendant use the car for only a short period. (See, People v Jennings, 69 NY2d 103, 119 [1986]; People v Alamo, 34 NY2d 453, 459 [1974].)
Unauthorized use differs from larceny, then, in terms of the duration of the taking. But the unauthorized use statute aims at essentially the same wrong as the larceny statute — namely, the knowingly wrongful misappropriation of someone else’s property or, in plainer English, stealing. It has long been recognized that the assertion that defendant acted under a good-faith claim of right is a defense to a charge of larceny (see, People v Reid, supra). There appears to be no published New York case where the defense of claim of right has been asserted or applied where the crime charged is unauthorized use of a vehicle. Nevertheless, as a matter of logic and fairness, claim of right should be available as a defense to unauthorized use. A defendant who takes or uses a car under a good-faith claim of right lacks the evil intent ordinarily required for any crime. (See, Morissette v United States, 342 US 246 [1952].) And, to track the language of the unauthorized use statute, such a defendant does not “know” that he lacks the owner’s consent to use the car; rather the defendant in such a case believes that he is entitled to use the car, either because he himself owns an interest in the car, or because he has otherwise been given permission to use the car. Thus, this court finds that a good-faith claim of right is a defense to the charge of unauthorized use of a vehicle.
Turning again to the facts of the present case, it is undisputed that defendant Brown truly believed he had a right to use the car on the day in question. Moreover, as previously noted, there was at the very least a colorable, good-faith basis for that belief because defendant paid for the car and because, for many months, Ms. Lindo had permitted defendant to use the car whenever he wanted. It is admittedly true that legal title to the car was held by Ms. Lindo and her father, and that Ms. Lindo had a very different understanding of the agreement she and defendant had struck concerning the car’s use. Nevertheless defendant did believe in good faith that he was entitled to *333 use the car on the day in question. Accordingly, he is not guilty of attempted unauthorized use of a vehicle. Any other verdict would elevate to the level of a crime what was in truth a petty civil dispute between Mr. Brown and Ms. Lindo over the precise terms of their vague and informal agreement to share the use of the car.
C. Criminal Mischief
Although the issue is a close one, the court reaches a different verdict with respect to the charge of criminal mischief.
Penal Law § 145.00 (1) provides in relevant part that a person is guilty of criminal mischief in the fourth degree when “having no right to do so nor any reasonable ground to believe that he has such a right, he * * * [i]ntentionally damages property of another person.” (Emphasis added.)
Criminal mischief typically involves acts of vandalism committed by a defendant against property that is wholly owned either by strangers or by the defendant’s enemies. Thus, in the typical case, the statutory requirement that the property must belong to “another person” presents no difficulty.
More complicated issues arise when the property at issue might be regarded as jointly owned by the defendant and the complainant. As a strictly literal matter, it would appear that property jointly owned by a defendant and a complainant qualifies as property of “another person” within the meaning of the criminal mischief statute. That is so because property is that of another person “ ‘if anyone, other than the defendant, has a possessory or proprietary interest in such tangible property’ ” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 145.00, at 104, citing Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 145, at 376 [1967]).
However, the Appellate Division, Second Department, has relatively recently held that a husband cannot be convicted of either larceny or criminal mischief for stealing or destroying marital property on the theory that a husband has an equitable interest in such property pursuant to the Domestic Relations Law. (People v Person, 239 AD2d 612 [2d Dept 1997], supra.)
Person (supra) can be read either broadly or narrowly. Read narrowly, Person stands for the limited proposition that one spouse cannot be guilty of criminal mischief for the destruction of jointly held marital property. Read broadly, Person appears to stand for the far more general proposition that, like the *334 larceny statute, the criminal mischief statute does not apply to property jointly owned by the defendant and the complainant, even in a case where such joint ownership is strictly equitable in nature.
The Person decision (supra) has been roundly criticized in both judicial and scholarly circles. (See, People v Kheyfets, 174 Misc 2d 516 [Sup Ct, Kings County 1997], supra; Lutz and Slye, Where Criminal Mischief is Not a Crime, NYLJ, Oct. 31, 1997, at 1, col 1.) Person is also at odds with what appears to be the emerging rule in most other States where courts have held that a spouse can be liable for criminal mischief (as defined by statutes worded quite similarly to New York’s criminal mischief statute) for the destruction of jointly owned marital property. (See, e.g., People v Schneider, 139 Ill App 3d 222, 487 NE2d 379; State v Zeien, 505 NW2d 498 [Iowa 1993]; see generally, People v Kheyfets, 174 Misc 2d, supra, at 522-523 [collecting authorities].)
Person (supra) appears to be wrongly decided. The defect in the reasoning of that decision is the unspoken and unexplained assumption that the specialized definition of “owner” for the larceny statute that is set out in Penal Law § 155.00 (5) — a definition that (as discussed above) excludes co-owners from the scope of the larceny statute — also applies to the criminal mischief statute.
That assumption is mistaken. According to its own terms, the specialized statutory definition of “owner” set out in Penal Law § 155.00 (5) is applicable only to title J of the Penal Law (that is, “Offenses Involving Theft”). The criminal mischief statute is part of title I (“Offenses Involving Damage to and Intrusion Upon Property”), and is not part of title J. It is therefore wrong to assume that the same definition applies to both statutes. (See, People v McNamara, 78 NY2d 626, 630 [special definition of “public place” for article 240 of the Penal Law should not be applied to same phrase when used in article ' 245 of the Penal Law].) Indeed, unlike the larceny statute, the criminal mischief statute does not use the word “owner” at all. Rather, the criminal mischief statute, Penal Law § 145.00 (1), speaks of damaging the property “of another person.” If the Legislature had intended to incorporate section 155.05 (5)’s specialized definition of the word “owner” and the resulting exemption for co-owned property into the criminal mischief statute, then the Legislature would have used the same language in both the larceny and mischief statutes. But because the Legislature used substantially different definitional *335 language in the criminal mischief statute, it is plain that the Legislature intended a different meaning.
The Legislature’s decision — embodied in the very different definitional language of the larceny and criminal mischief statutes — to distinguish between these two crimes with respect to shared or co-owned property makes good common sense. That is so because the two crimes, by their very nature, operate very differently with respect to shared property. On the one hand, in a larceny prosecution — where one co-owner is accused of wrongfully taking an item of shared property — there is usually a good chance that the defendant was embroiled in a disagreement with a co-owner over the precise terms of their co-ownership agreement, but that defendant did not harbor any criminal intent. Moreover, in such a case the shared property can, in any event, usually be returned to the aggrieved co-owner and any temporary loss can be addressed by ordinary civil remedies. Thus, the ancient rule that a co-owner cannot be guilty of larceny (People v Zinke, 76 NY2d 8, supra) is fair and logical.
On the other hand, in a criminal mischief prosecution— where one co-owner is accused of deliberately destroying an item of shared property — there is ordinarily little reason to suppose that defendant believed his conduct was permitted under any rational construction of his agreement with his co-owners. Thus a defendant who deliberately destroys shared property — and thereby deliberately inflicts economic injury upon his co-owners — ordinarily must know that he is acting wrongfully. Moreover, once such property is destroyed, it cannot be returned to the co-owner. Thus it makes sense that the criminal mischief statute — unlike the larceny statute — does not exempt co-owners from criminal liability.[2]
To restate the same concept in somewhat different terms, where two or more people share an item of personal property, it is to be expected that they will reach some agreement to take turns possessing and using that item, and it is not surprising that disputes will sometimes arise over such arrangements. The interpretation and enforcement of such co-ownership *336 agreements and the resolution of such disputes are properly the business of a civil, and not a criminal, court. Thus the Legislature has properly provided that there can be no criminal charge of larceny as between co-owners. By way of contrast, no one expects that a co-owner will deliberately destroy shared property because it is naturally presumed that the other co-owner would not consent to such destruction. Thus the Legislature has further properly provided in the criminal mischief statute that the destruction of shared property — like the destruction of a stranger’s property — is a criminal matter.
The Person decision (supra) when read broadly is capable of creating great mischief, particularly in the context of domestic violence prosecutions. This court — which is dedicated to the trial of domestic violence cases — has observed that the destruction of property is often part of an overarching pattern of serious domestic abuse and a precursor to direct violence against the person. (That observation has, of course, already been made by other courts and by experts in the field. [See, Klein and Orloff, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law, 21 Hofstra L Rev 801, 872 (1993)].) More specifically, this court has seen many cases where an abusive “live-in” boyfriend has broken up household furniture or destroyed telephones in order to wreak petty vengeance, to intimidate his girlfriend and/or to discourage calls for help. Typically, in such a case no one has a clear understanding about who is the legal “owner” of such shared items of mundane household property. Thus it will usually be plausible for the defendant in such a case to argue that he is an equitable co-owner of such property and that he is therefore exempt from prosecution for criminal mischief under the rule of Person. And, if the Person decision is read broadly, Person would appear to mandate that such a defendant be acquitted on a charge of criminal mischief. That is bad policy and bad law.[3] Accordingly, this court believes that the instant case and others like it should prompt the appellate courts to revisit Person and the issues raised therein.
*337 This court does recognize that it is nevertheless bound by the decision in Person (supra) unless and until it is overruled by the Court of Appeals or until the Appellate Division, First Department, expresses a different view. (People v Shakur, 215 AD2d 184 [1st Dept 1995].) But defendant Brown’s case is, fortunately, clearly distinguishable from Person for at least two important reasons. First, defendant Brown and complainant have never been married and so defendant cannot claim a spouse’s equitable interest in marital property. Second, unlike most items of personal property, it is fairly easy to determine who owns a car because a car has a formal legal title. Legal title to the car in this case belonged to Ms. Lindo and her father, and defendant knew it. Defendant was not an owner or co-owner of the car; at best, he had an agreement with Ms. Lindo to share the use of the car. Thus there is no doubt that the car in this case was the property of “another person” within the meaning of the criminal mischief statute. Moreover, defendant had no right to destroy the car nor any reason to believe he had such a right; that is so because no one contends that Ms. Lindo ever agreed, either expressly or by implication, that defendant could wreck the car.
To put matters more plainly, defendant may reasonably have believed that he had a right to use the car. Thus he is not guilty of attempted unauthorized use. But defendant did not believe and could not reasonably have believed he had a right to destroy the car. He destroyed the car because he was angry at Ms. Lindo for denying him the use of the car. That is “criminal mischief’ in both the ordinary and legal sense of that phrase. Accordingly, defendant is found guilty of attempted criminal mischief.

. See, Hale, History of Pleas of the Crown, at 513 (1683) (“Regularly a man cannot commit felony of the goods, wherein he hath a property,” quoted in People v Zinke, 76 NY2d, supra, at 11).

. In this respect, the criminal mischief statute is similar to the arson statute. The relevant sections of the arson statute provide that it is an affirmative defense to arson that the building is wholly owned by the defendant (Penal Law §§ 150.05, 150.10) (unless the defendant knows there are people inside the building, see, Penal Law §§ 150.15, 150.20). Thus, a co-owner who destroys shared property by arson is guilty of a crime, notwithstanding the fact that he owns an interest in the property destroyed.

. The court recognizes that there are, of course, cases involving domestic disputes and minimal property damage where it might not be appropriate to pursue criminal mischief charges even though such charges are made out under the literal language of the statute. For example, it would likely not be worthwhile to pursue criminal mischief charges each time a housewife broke a plate or a husband punched a door in frustration during a domestic argument. However, as in many similar matters, the legal system must rely on the wisdom and good judgment of police, prosecutors, defense lawyers, Judges and juries to see to it that such trivial misconduct will not result in a criminal conviction.