**Ronald S. JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 99–CM–575.**

District of Columbia Court of Appeals.

Argued Nov. 14, 2002.
Decided March 27, 2003.

---

Lauckland A. Nicholas for appellant.

David B. Goodhand, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese III, and Kimberley S. Knowles, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and WASHINGTON, Associate Judges, and FERREN, Senior Judge.

WASHINGTON, Associate J.

The questions presented in this case are: (1) whether a co-owner of property can be found guilty of malicious destruction of that property and (2) if yes, whether there was sufficient evidence presented in this case to find appellant guilty of destruction of property. While this court has not previously ruled on the first issue, we now hold that a co-owner of property may be found criminally liable for the destruction of that property. We also find that there was sufficient evidence presented in this case to convict appellant.

## I.

Appellant, Ronald Jackson, became a co-owner of a house located in Washington, D.C. when his wife, Mrs. Jackson, added his name to the deed of her house. Subsequently, in January 1998, the couple became estranged and appellant moved out. However, Mrs. Jackson continued to live in the house. On June 13, 1998, Mr. Jackson called his wife and stated he wanted to stop by the house to pick up a pair of sunglasses he had left. Although Mrs. Jackson informed appellant that he could not retrieve the sunglasses at that time, appellant nevertheless came to the house. Upon seeing him, Mrs. Jackson went inside and locked the door. However, appellant gained entry into the house by applying force to the locked door.[1]

After a bench trial, appellant was found guilty of malicious destruction of property, D.C.Code § 22–303 (2002), for damaging the front door of the house that appellant and Mrs. Jackson co-owned. The statute makes it a crime to "maliciously injure or break or destroy or attempt to injure or break or destroy, by fire or otherwise, any public or private property, whether real or personal, not his or her own . . . ." Appellant appeals his conviction because he in-

---

1. According to Mrs. Jackson, upon gaining entry into the house, appellant threatened to burn the house down. Appellant was charged with threats to do bodily harm, pursuant to D.C.Code § 22–407 (2001). This part of the case against appellant was tried before a jury and appellant was acquitted.

terprets the phrase "not his or her own" as precluding the prosecution of anyone with any ownership rights, either full or partial, in the damaged property.

## II.

■■■■ "[T]he construction of a statute raises a 'clear question of law,' and we review the trial court's ruling *de novo*." *Ashton Gen. P'ship. v. Federal Data Corp.,* 682 A.2d 629, 632 (D.C.1996) (citing *District of Columbia v. Morrissey,* 668 A.2d 792, 796 (D.C.1995)). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)).

The parties contend, and we agree, that the phrase "not his or her own" is ambiguous because it could either refer to property that is fully owned by an individual or property that is at least partially owned. Thus, we must look beyond the plain language of the statute to determine whether the legislature intended for the statute to apply to individuals who have an ownership interest in the damaged property. Typically, we would look next to the legislative history of the Act to help us interpret the intent of the legislature. Unfortunately, the legislative history of the Act provides no assistance in interpreting the language "not his or her own." Given the ambiguity of the language and the lack of any helpful legislative history, we have looked to other jurisdictions with similar statutes to determine whether their interpretations provide any guidance on how to interpret the phrase "not his or her own." In *People v. Kahanic,* 196 Cal.App.3d 461, 241 Cal.Rptr. 722 (1987), a defendant damaged property that she co-owned with her husband and was charged with vandalism. Under the relevant California statute, a person is guilty of vandalism "who mali-

ciously (1) defaces with paint or any other liquid, (2) damages or (3) destroys any real or personal property *not his or her own,* in cases otherwise than those specified by state law." *Id.* at 723 (emphasis added). As in this case, the defendant argued that the statute did not apply to her because the property was *her own.* The California Court of Appeals, however, rejected this argument, holding that the statute was, in fact, applicable to her because "not his or her own" referred to sole ownership and, therefore, excluded "criminality only when the actor-defendant is involved with property *wholly* his or her own." *Kahanic,* 241 Cal.Rptr. at 725 (emphasis added). This interpretation by the California Court of Appeals is not without academic support as commentators have also interpreted the phrase "not his or her own" as meaning sole ownership. *See* 4 WHARTON'S CRIMINAL LAW (14th ed.1981) (Malicious Mischief, § 490 p. 96, fns. omitted). In fact, to interpret such statutes as not protecting individuals with partial ownership rights would be inconsistent with the general purpose of such a statute. *See* 54 C.J.S. *Malicious or Criminal Mischief* § 2 (1987) (noting that the general intent of statutes relating to destruction of property is to protect the ownership rights of individuals). While we have been unable to find any other jurisdictions with a statute substantially similar to our own, it is interesting to note that courts throughout the country have almost universally held that a defendant may be found criminally liable for damaging property he or she co-owns. *See State v. Superior Court,* 188 Ariz. 372, 936 P.2d 558, 559 (Ct.App.1997) (court held defendant criminally liable for damaging a door in a house defendant owned with his wife, stating "because [defendant] damaged property that was owned, in part, by another person, he damaged the 'property of another person' within the meaning of" the statute prohibiting destruction of the

property of another); *People v. Jones,* 145 Ill.App.3d 835, 99 Ill.Dec. 636, 495 N.E.2d 1371, 1372 (1986) (holding that the "property of another" imposes "criminal responsibility on a person who damages another's interest in property, regardless of whether ownership in the property is shared; a person does not have the right, by virtue of part ownership, to harm the interest of another person in that property."); *State v. Zeien,* 505 N.W.2d 498, 498–99 (Iowa 1993) (finding a defendant guilty of criminal mischief for destroying property in his estranged wife's home stating "the statute clearly applies to property that the actor has no 'right' to damage."); *State v. Mayhood,* 308 Minn. 259, 241 N.W.2d 803, 804–05 (1976); *New York v. Brown,* 185 Misc.2d 326, 711 N.Y.S.2d 707, 713 (N.Y.Crim.Ct.2000) (stating that there is "an emerging rule in most other States where courts have held that a spouse can be liable for criminal mischief (as defined by statutes worded quite similarly to New York's criminal mischief statute) for the destruction of jointly owned marital property."); *State v. Webb,* 64 Wash.App. 480, 824 P.2d 1257, 1263 (1992) (holding that property of another "includes property co-owned by the defendant").

■ In contrast to the significant number of jurisdictions that have looked at this issue and decided that joint owners of property may be prosecuted for destruction of their jointly owned property, appellant relies almost entirely on one case, *New York v. Person,* 239 A.D.2d 612, 658 N.Y.S.2d 372 (1997), as support for his contention that one cannot be prosecuted for such an act. In *Person,* the court held that a defendant cannot be convicted of criminal mischief and petit larceny because "the defendant had an equitable interest in the items he was charged with damaging or stealing." *Id.* at 373 (citations omitted). While this case appears to support appellant's position, it also appears to be an anomaly and has been widely criticized,

even in New York. *See Brown,* 711 N.Y.S.2d at 713 (stating "[t]he *Person* decision when read broadly is capable of creating great mischief, particularly in the context of domestic violence prosecutions ... *Person* would appear to mandate that [a co-owner] be acquitted on a charge of criminal mischief [for destroying property he co-owned]. That is bad policy and bad law."); *see also State v. Coria,* 146 Wash.2d 631, 48 P.3d 980, 984 (2002). In the absence of any legislative history to the contrary and consistent with the rationales espoused almost universally by other jurisdictions that have addressed this issue, we specifically reject the interpretation adopted by the court in *Person* and join with those jurisdictions that have held that a person may be prosecuted for destroying property not solely owned by that person.

This issue has particular relevance in domestic violence situations, where spouses co-own property. When a family has domestic violence problems, one manifestation of the violence is often destruction of co-owned property. *Brown,* 711 N.Y.S.2d at 714 (stating "[t]his court—which is dedicated to the trial of domestic violence cases—has observed that the destruction of property is often part of an overarching pattern of serious domestic abuse and a precursor to violence against the person") (citing Catherine F. Klein & Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes & Case Law,* 21 HOLSTRA L. REV. 801, 872 (1993)). Others also acknowledge the connection between domestic violence and criminal liability for destruction of co-owned property. The Domestic Violence Unit Chief in San Diego, California stated "the single biggest advance in domestic violence intervention in this jurisdiction occurred when California's vandalism laws were interpreted to apply to a batterer's destruction of community property." Vic-

toria L. Lutz & Cara A. Bonomolo, *My Husband Just Trashed Our Home; What Do You Mean That's Not a Crime?*, 48 S.C.L. REV. 641, 654 (1997). In Iowa, the appellate court held that "the wording of [its] statute, as well as public policies of preventing domestic violence and damage to property generally, suggests that the statute should apply to marital property as well as any other." *Zeien*, 505 N.W.2d at 499. The court in *People v. Kheyfets*, 174 Misc.2d 516, 665 N.Y.S.2d 802, 805 (N.Y.Sup.Ct.1997), stated that holding individuals liable for destruction of property they own jointly with another "would be in tune with the spirit of the recent Federal and State domestic violence legislation." *Id.* at 806. These considerations are not insubstantial given the number of legislature initiatives that have been passed to address issues of domestic violence in the District of Columbia. Our conclusion, that D.C.Code § 22–303 applies to individuals who destroy jointly owned property, is certainly consistent with the intent of those legislative initiatives.

Finally, Mr. Jackson argues that the evidence was insufficient to convict him on the malicious destruction charge.

In considering appellant['s] … argument [ ] that the government failed to present sufficient evidence to establish [his] guilt, we must view the evidence in the light most favorable to the government, recognizing the factfinder's role in weighing the evidence, determining the credibility of witnesses, and drawing justifiable inferences from the evidence. The government is not required to negate every possible inference of innocence. On the contrary appellants … must establish that the government presented no evidence upon which a reason-

able mind could infer guilt beyond a reasonable doubt.

*Hebron v. United States*, 804 A.2d 270, 273 (D.C.2002). Mr. Jackson suggests that part of the damage to the door resulted from the actions of the boyfriend of Mrs. Jackson's daughter. However, in this case, Mrs. Jackson testified that appellant kicked the door and caused substantial damage to it. Though Mr. Jackson's version of the events differs from his wife's, the fact-finder was entitled to believe either version of how much force Mr. Jackson used when opening the locked door and how much damage resulted from the use of that force. Therefore, Mrs. Jackson's testimony provided sufficient evidence for the trial court to find appellant guilty of malicious destruction. *See McCoy v. United States*, 781 A.2d 765, 769 (D.C.2001).[2]

The judgment of the trial court is hereby

*Affirmed*

---

**2.** Jackson has not claimed that he had the right to use force against the door upon the ground that he was being denied entry to his own home, and we therefore do not address or decide the merits of such a claim.