[No. F042778. Fifth Dist. Oct. 19, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY LEROY WALLACE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION‡]**

---

‡Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2–10 of the Discussion.

COUNSEL

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GOMES, J.—**

## FACTUAL AND PROCEDURAL BACKGROUND

One summer evening in Fresno, Anthony LeRoy Wallace's wife of two months, Arlissa Pointer Wallace, caught him smoking crack cocaine, called him a crack head, and told him to leave the house she had bought six or seven years before the marriage and had refinanced shortly after the marriage.[1] Although she had kept the house in her name, Wallace presumably had acquired a small community property interest through mortgage payments with community property funds.

Instead of leaving, however, Wallace began tearing up the house. Frightened, Pointer kept her distance from him as she opened the living room curtains in the hope a neighbor might see and call the police. He kept breaking things. Twice she dialed 911, but twice she hung up, fearing things would get much worse if he knew she had called. He left before the police arrived. She told a police officer that the only thing he had not broken in the house was his own stereo and that everything else in the house belonged to her. A couple of hours later, alerted by a neighbor to "incredible pounding, very, very loud noise" from the house, police officers found Wallace inside the house breaking things again. Only after he challenged three armed and uniformed officers to fight, did they subdue him with a taser and arrest him.

At trial, an expert witness testified to over $9,000 of damage to the house and to over $6,000 of damage to the furniture and furnishings. A jury found Wallace guilty of felony vandalism and of two misdemeanors—being under the influence and resisting, delaying, or obstructing an officer ("resisting")—

---

[1] For clarity, later references to husband and wife will be to Wallace and Pointer, respectively.

and found two assault with a deadly weapon priors true as both serious felony priors and prison term priors. (Pen. Code, §§ 148, subd. (a)(1), 245, subd. (a)(1), 594, subd. (b)(1), 667.5, subd. (b), 1192.7, subd. (c); Health & Saf. Code, § 11550, subd. (a).)[2] The court sentenced him to a 25-year-to-life term for felony vandalism, a consecutive term of one year on each of his two prison term priors, and time served on each of his two misdemeanors. (§§ 594, subd. (b)(1), 667, subds. (b)–(j), 667.5, subd. (b), 1170.12, subds. (a)–(d).)

## INTRODUCTION

Wallace argues that as a matter of law he cannot be guilty of vandalizing either community property or his spouse's separate property inside the marital home. In the published portion of our opinion, we will reject his argument and embrace the emerging rule imposing criminal liability on a spouse for intentionally causing harm to property in which the other spouse has an interest, whether the property is individual or marital, whether the harm occurs outside or inside the marital home. In the nonpublished portion of our opinion, we will address his numerous other arguments and grant relief as to two. In the first, the evidence showed, and the prosecutor argued, that Wallace committed two acts of resisting, but the record shows neither an explicit election by the prosecutor nor a unanimity instruction by the court, so we will order the resisting conviction stricken from the judgment. In the second, the court miscalculated Wallace's presentence custody credit and failed to award him the presentence conduct credit to which he was entitled, so we will modify the judgment accordingly. Otherwise we will affirm the judgment.

## DISCUSSION

### 1. *Scope of Vandalism Statute*

The question before us is whether a spouse can be guilty of vandalizing community property and the other spouse's separate property inside the marital home. Wallace asks us to answer that question in the negative on the basis of "the common law rule that a person's home is his or her castle" and the language in the vandalism statute (§ 594) that a vandal can deface, damage, or destroy only property that is "not his or her own." The Attorney General asks us to answer that question in the affirmative, arguing that vandalism is not a crime that threatens property rights only in a particular place, that the criminal law protects each owner's interest in community property against nonconsensual damage by the other, and that Pointer's separate property suffered most of the harm anyway.

---

[2] All subsequent statutory references are to the Penal Code except where otherwise noted.

■ In *People v. Kahanic* (1987) 196 Cal.App.3d 461 [241 Cal.Rptr. 722] (*Kahanic*), we held that the vandalism statute applies to community property on the rationale that the "essence of the crime is in the physical acts against the ownership interest of another, even though that ownership is less than exclusive." (*Id.* at p. 466.) Citing *Kahanic*, a proposed vandalism instruction from the Judicial Council's Task Force on Jury Instructions requires proof that the accused "did not own the property" or "owned the property with someone else." (See Cal. Jud. Council, Task Force on Jury Instructions, Criminal Jury Instructions (July 5, 2004 Draft) Inst. No. 1995, pp. 1–2.)

However, Wallace argues that with the vandalism in *Kahanic* occurring outside the marital home the case is inapposite to the issue here whether "the common law rule that a person's home is his or her castle" precludes criminal liability for vandalizing property in one's own home. He analogizes that issue to the question whether a person can burglarize his or her own home and notes the California Supreme Court relied on the common law rule to hold that the burglary statute applies only to "a person who has no right to be in the building." (*People v. Gauze* (1975) 15 Cal.3d 709, 714 [125 Cal.Rptr. 773, 542 P.2d 1365].) Emphasizing that "burglary and the lesser related offenses of trespass and vandalism *are* 'closely related' " (*People v. Farrow* (1993) 13 Cal.App.4th 1606, 1625–1626 [16 Cal.Rptr.2d 844], citing *People v. Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303], overruled by *People v. Birks* (1998) 19 Cal.4th 108, 112–113, 136 [77 Cal.Rptr.2d 848, 960 P.2d 1073]), he argues that as one can neither burgle nor trespass in one's own home, neither can one vandalize property in one's own home.

■ Wallace's argument ignores three key differences between vandalism, on the one hand, and burglary and trespass, on the other. First, one can commit vandalism anywhere (see § 594),[3] but one can commit burglary and trespass only by entering into a specific place (see §§ 459,[4] 602). Second, one cannot commit vandalism without defacing, damaging, or destroying property (see § 594), but one can commit burglary and trespass without harming any

---

[3] Section 594, subdivision (a) provides: "Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism: [¶] (1) Defaces with graffiti or other inscribed material. [¶] (2) Damages. [¶] (3) Destroys."

[4] Section 459 provides in part: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel . . . , floating home . . . , railroad car, locked or sealed cargo container . . . , trailer coach . . . , any house car . . . , inhabited camper . . . , vehicle . . . when the doors are locked, aircraft . . . , or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary."

property at all (§§ 459, 602[5]). Third, the harm that vandalism by a spouse necessarily inflicts to community property or to the other spouse's separate property ousts the other spouse of his or her ownership interest in a way that neither burglary nor trespass necessarily does. Together, those differences foil Wallace's endeavor to broaden to vandalism the rule that applies to burglary and trespass.

■ Instead, on the question before us, we broaden our holding in *Kahanic* to embrace the emerging rule imposing criminal liability on a spouse for intentionally causing harm to property in which the other spouse has an interest, whether the property is individual or marital, whether the harm occurs outside or inside the marital home. (*Kahanic, supra,* 196 Cal.App.3d at p. 466; see, e.g., *Jackson v. United States* (D.C. 2003) 819 A.2d 963, 964–967 (*Jackson*) [spouse criminally liable for harm to marital property at marital home under statute prohibiting harm to property "not his or her own"]; *State v. Superior Court* (Ct.App. 1997) 188 Ariz. 372 [936 P.2d 558, 559] [spouse criminally liable for harm to joint tenancy property of both spouses under statute prohibiting damage to "property of another person"]; *State v. Coria* (2002) 146 Wn.2d 631 [48 P.3d 980, 981–985] (*Coria*) [spouse

---

[5] Former section 602 provided in part: "[E]very person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor: [¶] . . . [¶] (g) Entering upon any lands owned by any other person whereon oysters or other shellfish are planted or growing . . . . [¶] . . . [¶] (j) Entering any lands, whether unenclosed or enclosed by fence, . . . with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of the land, the owner's agent or by the person in lawful possession. [¶] (k) Entering any lands under cultivation or enclosed by fence, belonging to, or occupied by, another, or entering upon uncultivated or unenclosed lands where signs forbidding trespass are displayed . . . without the written permission of the owner of the land, the owner's agent or of the person in lawful possession, and [¶] (1) Refusing or failing to leave the lands immediately upon being requested by the owner of the land, the owner's agent or by the person in lawful possession to leave the lands . . . . [¶] . . . [¶] (l) Entering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession. [¶] (m) Driving any vehicle . . . upon real property belonging to, or lawfully occupied by, another and known not to be open to the general public, without the consent of the owner, the owner's agent, or the person in lawful possession . . . . [¶] (n) Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave . . . . [¶] (o) Entering upon any lands declared closed to entry . . . if the closed areas shall have been posted with notices declaring the closure . . . . [¶] (p) Refusing or failing to leave a public building of a public agency during those hours of the day or night when the building is regularly closed to the public upon being requested to do so . . . . [¶] (q) Knowingly skiing in an area or on a ski trail which is closed to the public and which has signs posted indicating the closure. [¶] (r) Refusing or failing to leave a hotel or motel, where he or she has obtained accommodations and has refused to pay for those accommodations, upon request of the proprietor or manager . . . . [¶] . . . [¶] (t)(1) Knowingly entering, by an unauthorized person, upon any airport operations area if the area has been posted with notices restricting access to authorized personnel only . . . ." Later statutory amendments made changes not relevant here. (See Stats. 2002, ch. 608, § 2, eff. Sept. 17, 2002; Stats. 2003, ch. 805, § 1.3.)

criminally liable for harm to community property at marital home under statute prohibiting damage to "property of another"]; *Hughes v. State* (Alaska Ct.App. 2002) 56 P.3d 1088, 1094–1095 [spouse criminally liable for harm to marital property at marital home under statute prohibiting damage to "property of another"]; *Ginn v. State* (2001) 251 Ga.App. 159 [553 S.E.2d 839, 840, 842] [spouse criminally liable for harm to marital property at marital home under statute prohibiting damage to "any property of another"]; *State v. Sevelin* (Ct.App. 1996) 204 Wis.2d 127 [554 N.W.2d 521, 522–523] [spouse criminally liable for harm to marital property at marital home under statute prohibiting damage to "any physical property of another"]; *State v. Zeien* (Iowa 1993) 505 N.W.2d 498, 498–499 [spouse criminally liable for harm to marital property at marital home under statute prohibiting damage to property "by one who has no right to so act"]; *People v. Schneider* (1985) 139 Ill.App.3d 222 [487 N.E.2d 379, 379–381, 93 Ill.Dec. 712] [spouse criminally liable for harm to marital property under statute prohibiting damage to "any property of another"]; but see *Horn v. State* (2004) 908 So.2d 303 [spouse not criminally liable for harm to marital property under statute prohibiting "damages to property"]; *State v. Powels* (2003) 2003 NMCA 90, 134 N.M. 118 [73 P.3d 256, 257–259] [spouse not criminally liable for harm to marital property under statute prohibiting damage to "any real or personal property of another"]; *People v. Person* (1997) 239 A.D.2d 612 [658 N.Y.S.2d 372, 373] (*Person*) [spouse not criminally liable for harm to marital property under statute prohibiting damage to "property of another person"];[6] see generally Lutz & Bonomolo, *My Husband Just Trashed Our Home; What Do You Mean That's Not a Crime?* (1997) 48 S.C. L.Rev. 641, 651 ["[W]hen a husband destroys property that he owns jointly with his wife, not only does he destroy his property, which he may have a right to destroy, but he simultaneously destroys his wife's undivided one hundred percent interest in the property, which he does not have a right to destroy."]; cf. Carpenter, *Of the Enemy Within, The Castle Doctrine, and Self-Defense* (2003) 86 Marq. L.Rev. 653, 693 ["The innocent cohabitant still has an identifiable interest in the protection that the sanctuary might offer and should not be denied its safe harbor because someone else may share in its possession. [Fn. omitted]"].)

■ Accordingly, we answer in the affirmative the question before us and

---

[6] *Jackson* slams *Person* as "an anomaly . . . widely criticized, even in New York." (*Jackson, supra,* 819 A.2d at p. 966.) *Coria* belittles *Person* for "fail[ing] to persuade even lower courts in New York" and notes that one case "followed *Person* with a serious grudge and a call for legislative reversal" and that another case "stat[ed] outright that it was decided wrongly." (*Coria, supra,* 48 P.3d at p. 984, citing *People v. Kheyfets* (N.Y. Sup. Ct. 1997) 174 Misc.2d 516 [665 N.Y.S.2d 802, 804–806] and *People v. Brown* (N.Y. Crim. Ct. 2000) 185 Misc.2d 326 [711 N.Y.S.2d 707, 713–714] [excoriating *Person* as "bad policy and bad law" and "capable of creating great mischief, particularly in the context of domestic violence prosecutions" since "the destruction of property is often part of an overarching pattern of serious domestic abuse and a precursor to direct violence against the person"].)

hold that a spouse can be guilty of vandalizing community property and the other spouse's separate property inside the marital home.

■   Finally, on the premise that the Family Code confers on each spouse "absolute power of disposition" of community personal property until service of a reciprocal temporary restraining order to the contrary (Fam. Code, §§ 1100, 2040, subd. (a)(2)), Wallace argues that as he and Pointer were not engaging in family law litigation, but rather were cohabiting as husband and wife, he cannot as a matter of law be guilty of vandalizing community personal property. Case law from other states applies the emerging rule to spouses cohabiting and presumably not engaging in family law litigation at the time of the vandalism (see, e.g., *State v. Superior Court, supra,* 936 P.2d at p. 559; *Coria, supra,* 48 P.3d at p. 981; *Ginn v. State, supra,* 553 S.E.2d at p. 840; *State v. Sevelin, supra,* 554 N.W.2d at p. 522) as well as to spouses no longer cohabiting and either estranged or contemplating, if not actually engaging, in family law litigation at the time of the vandalism (see, e.g., *Jackson, supra,* 819 A.2d at p. 964; *State v. Zeien, supra,* 505 N.W.2d at p. 498; *Hughes v. State, supra,* 56 P.3d at p. 1089; *People v. Schneider, supra,* 487 N.E.2d at pp. 379–380.) Wallace articulates, and we perceive, no sound reason in public policy or the law for the astounding notion that the criminal law should afford protection to some spouses but not to others. We decline to so limit our holding.[7]

2.–10.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] In violation of the rule of court requiring briefs to "state each point under a separate heading or subheading summarizing the point," Wallace argues in passing that construing the vandalism statute to include marital property would "run afoul of the constitutional prohibition against vague penal statutes." (Cal. Rules of Court, rule 14(a)(1)(B).) We have no duty to address his argument. (*In re David L.* (1991) 234 Cal.App.3d 1655, 1661 [286 Cal.Rptr. 398].) Even were we to consider his argument, we would not grant relief. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited *and* in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations.]" (*Kolender v. Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 103 S.Ct. 1855], italics added.) "A law is void for vagueness only if it 'fails to provide adequate notice to those who must observe its strictures' *and* ' "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' [Citations.]" (*People v. Rubalcava* (2000) 23 Cal.4th 322, 332 [96 Cal.Rptr.2d 735, 1 P.3d 52], italics added.) The void-for-vagueness doctrine is conjunctive, not disjunctive. (*Kolender v. Lawson, supra,* 461 U.S. at pp. 357–358; *Williams v. Garcetti* (1993) 5 Cal.4th 561, 575 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Wallace argues only the arbitrary enforcement factor, not the notice factor.

[*] See footnote, *ante,* page 144.

## DISPOSITION

The resisting conviction is ordered stricken from the judgment, which is modified to show 269 days of presentence custody credit, 134 days of presentence conduct credit, and 403 total days of presentence credit. The matter is remanded with directions to the court to issue and forward to the appropriate persons an abstract of judgment amended accordingly. Wallace has no right to be present at those proceedings. (See *People v. Price* (1991) 1 Cal.4th 324, 407–408 [3 Cal.Rptr.2d 106, 821 P.2d 610].) Otherwise the judgment is affirmed.

Levy, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 26, 2005. George, C. J., did not participate therein.