59 Cal.Rptr.3d 93 (2007)
150 Cal.App.4th 137
The PEOPLE, Plaintiff and Respondent,
v.
Thomas Joe SHADDEN, Defendant and Appellant.
No. F048765.
Court of Appeal of California, Fifth District.
April 24, 2007.
As Modified on Denial of Rehearing May 11, 2007.
*94 Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
WISEMAN, J.
Angry at the mother of his children, defendant Thomas Joe Shadden produced a gun and opened fire on her unoccupied car as bystanders looked on. He also stuck an ice pick in one of the tires. He was convicted of grossly negligent discharge of a firearm, discharging a firearm at an unoccupied motor vehicle, and being a felon in possession of a firearm. The 16year prison sentence he received includes 10 years of recidivism-based enhancements.
He now (1) challenges several aspects of the grossly-negligent-discharge and discharging-at-an-unoccupied-motor-vehicle *95 convictions; (2) argues that evidence of threats to a witness was inadmissible; (3) requests review of the disposition of his Pitchess motion; and (4) challenges his sentence pursuant to recent United States Supreme Court decisions. We conclude there was no reversible error and affirm the judgment.
We publish our holding that the owner-consent provision of the firing-at-an-unoccupied-vehicle statute requires the consent of all owners, not just that of the shooter, where the shooter is one of several co-owners. The statute does not allow one co-owner to shoot up a car without the consent of the other owners.
We also publish a portion of our discussion of defendant's sentencing claim under Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely) and Cunningham v. California (2007) ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham). Since the trial court here had discretion to impose a three-strikes sentence of 25 years to life, its imposition of upper term sentences, which were shorter, did not contravene the Supreme Court's precedents.

FACTUAL AND PROCEDURAL HISTORIES
Vanessa Ortiz considered herself defendant's wife, although they were not legally married and not living together. They had three children. Vanessa lived with the children and her brother, Jason Ortiz. According to Vanessa, defendant did not approve of Jason living in Vanessa's apartment with the children because Jason used methamphetamine. According to witnesses, Vanessa, Jason, and defendant all regularly used methamphetamine.
One night, Jason and his friend Ruben Navarrete drove to Vanessa's apartment and parked in the carport. Vanessa drove up shortly afterward. After the three of them got out of their cars, defendant and his friend Arturo Morales drove up. Defendant was angry and began arguing with Vanessa. During the argument, defendant punctured one of the rear tires of Vanessa's car with an ice pick. Vanessa walked into the apartment building.
Defendant punched Vanessa's car with his fist. Then he drew a gun and, from a distance of about six feet, fired at least four shots, shattering the window in the driver's door and making a number of bullet holes in the metal. Jason and Ruben stood nearby as defendant did these things. Other people were also nearby. When defendant was through, he and Arturo got back in the truck and drove off.
The District Attorney filed a four-count information. Count 1 was discharging a firearm in a grossly negligent manner. (Pen.Code, § 246.3.)[1] Count 2 was discharging a firearm at an unoccupied motor vehicle. (§ 247, subd. (b).) Count 3 was being a felon in possession of a firearm. (§ 12021, subd. (a)(1).) An additional count of being a felon in possession of a firearm, relating to a separate incident, was dismissed before trial at the prosecutor's request.
For sentence-enhancement purposes, in connection with each count, the information included special allegations regarding two prior offenses. These were 1997 convictions for arson (§ 451, subd. (d)) and making criminal threats (§ 422). The information alleged (1) that these were strikes, i.e., prior felony convictions within the meaning of section 667, subdivisions (c) through (j), and section 1170.12, subdivisions (a) through (e); (2) that the felonies were serious within the meaning of section 667, subdivision (a); and (3) that defendant *96 served a prison term for the prior offenses within the meaning of section 667.5, subdivision (b).
At trial, the witnesses to the shooting refused to identify defendant as the shooter. Jason testified that he saw defendant punch the car and puncture the tire; he heard the shots and saw the smoke, but. "wasn't paying attention" when the shots were fired and therefore did not see who fired them, although he was standing 20 feet away. Before yielding even this much information, Jason was evasive:
"Q. What do you recall about what he said or did that day?
"A. Nothing. [¶] ... [¶]
"Q. What did Thomas Shadden do when he was there that day?
"A. What did Thomas Shadden do?
"Q. Yeah.
"A. What do you mean?
"Q. I'm asking what Thomas Shadden did when he was there that day in the alley?
"A. I'm not understanding the question."
He explained that, because he was an exfelon, he would be regarded in a negative light by some if he testified against a criminal defendant. "When you go to prison, it's a whole different world. It's different rules. Nobody can help you. You have to basically do what you got to do and that's just the way it is." When confronted with his statement to police that defendant shot the car, Jason admitted he said something of that kind.
Ruben described the shooting in detail, but said he could not identify defendant as the shooter. As we will explain in more detail later, someone fired five shots at Ruben's parents' house, while Ruben was sleeping there, a few weeks after defendant shot Vanessa's car.
Vanessa testified that she saw defendant puncture the tire but was inside the building by the time the shots were fired and did not see who fired them. Arturo testified that he, not defendant, fired the shots. He claimed he did this because he shared defendant's objection to Jason living with Vanessa and the children.
The jury heard recordings of seven telephone calls defendant placed to Vanessa and other family members from jail. During these calls, defendant made many incriminating statements which are detailed in the unpublished portion of this opinion.
The jury found defendant guilty of counts 1 through 3. He waived his right to a jury trial on the prior-offense allegations; the court found them to be true.
Defendant filed a petition requesting that the court exercise its discretion pursuant to People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 and section 1385, subdivision (a), to dismiss the prior-offense allegations and avoid imposing a three-strikes sentence. The court granted the motion in part, striking, with respect to all three counts, the allegation regarding the conviction of making criminal threats. It also struck the prior prison term allegation with respect to counts 1 and 2.
The court imposed an aggregate sentence of 16 years in prison. This consisted of a doubled six-year upper term for grossly negligent discharge of a firearm plus two consecutive five-year enhancements pursuant to section 667, subdivision (a). An identical sentence was imposed for count 2 and stayed pursuant to section 654. A doubled six-year upper term was also imposed for count 3 and stayed pursuant to section 654.

DISCUSSION

I. Grossly negligent discharge of a firearm[**]

*97 II. Discharging firearm at an unoccupied motor vehicle

Section 247, subdivision (b), provides:
"Any person who discharges a firearm at an unoccupied motor vehicle or an uninhabited building or dwelling house is guilty of a public offense punishable by imprisonment in the county jail for not more than one year or in the state prison. This subdivision does not apply to shooting at an abandoned vehicle, unoccupied vehicle, uninhabited building, or dwelling house with the permission of the owner."
Vanessa and Jason testified that the car was registered in the names of both Vanessa and defendant. Defendant argues that in light of this, there was insufficient evidence to prove a violation, since he was an owner and necessarily had his own consent. He also contends that the court erroneously omitted a jury instruction on owner consent.

A. Consent of one co-owner
Defendant's interpretation of the statutethat one of several owners is not guilty if he shoots at the unoccupied vehicle with his own consent but not that of the other ownersis mistaken. In interpreting a statute, our objective is "to ascertain and effectuate legislative intent." (People v. Woodhead (1987) 43 Cal.3d 1002, 1007, 239 Cal.Rptr. 656, 741 P.2d 154.) "In the end, we `"must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]'" (Torres v. Parkhouse Tire Service, Inc. (2001) 26 Cal.4th 995, 1003, 111 Cal.Rptr.2d 564, 30 P.3d 57.) To relieve a co-owner of criminal responsibility because he gives himself permission to shoot at the car, without regard for the wishes of the other co-owners), would be an absurd consequence. The point of the owner-consent provision is to avoid liability for shots fired at property the owners did not want to preserve, not to provide a loophole for a co-owner who damages the property without another co-owner's permission.
Defendant's own phrasing of his argument reveals the absurdity of the consequences it entails: He "was entirely within his rights to discharge a firearm at his own vehicle." Persons are not within their rights when they destroy property they co-own without consent of the other owner or owners. This point was illustrated in People v. Kahanic (1987) 196 Cal.App.3d 461, 241 Cal.Rptr. 722. There, a wife threw a beer bottle through the rear window of a car she co-owned as community property with her husband. Convicted of vandalism, she argued on appeal that she could not be guilty of vandalizing her own property. (Id at pp. 462-463, 241 Cal.Rptr. 722.) The vandalism statute, section 594, then punished every person who vandalized property "`not his own.'" (Id. at p. 463, 241 Cal.Rptr. 722.) We held that the statute protected each owner against crimes against his or her interest in the property and did not make an exception for one owner's assault on the interest of the other. (Id at p. 466, 241 Cal.Rptr. 722.) We relied in part on case law holding that parties to a partnership were not immune from criminal liability for stealing partnership property from each other just because they each hold an undivided interest in the partnership property: "`Fundamentally, *98 stealing that portion of the partners' shares which does not belong to the thief is no different from stealing the property of any other person.'" (Id. at p. 464, 241 Cal.Rptr. 722.) (See also People v. Wallace (2004) 123 Cal.App.4th 144, 147-150, 19 Cal.Rptr.3d 790 [Kahanic applies to vandalism of community property inside marital home as well as community property elsewhere].) The same reasoning applies here. Shooting at a car in which one has an undivided part interest affects other owners' part interest in exactly the same way that shooting by a third party would do.
Defendant argues that interpreting the statute to require consent of all owners is not "logical" and would render it unconstitutionally vague; he says he "had no way to know shooting at his own unoccupied vehicle was a crime." This is no more persuasive than his claim that he had no way of knowing it was grossly negligent to shoot at a car in the carport of an occupied apartment building with people standing around. A reasonable person knows that if he has only a part interest in property, he cannot shoot that property up without asking those who own the remaining interest for permission.
In his reply brief, defendant argues for the first time that there was insufficient evidence to support the conviction because there was evidence that Vanessa gave "implied consent." This evidence was her testimony that she did not call the police. In an attempt to support this notion, defendant cites a Court of Appeal case dealing with police searches of premises with the consent of one co-occupant. That situation is not comparable to the facts here. Defendant also claims that it is evidence of Vanessa's consent to the discharge of the firearm that she said she did not call the police before he fired because "`he just stabbed the tire.'" We do not see how this testimony supports defendant's position.
In any event, failing to call the police is not evidence of consent, but even if it were, it would not show that there was insufficient evidence to support the conviction. A reasonable jury could find beyond a reasonable doubt that defendant acted without Vanessa's consent even though she did not call the police.

B. Jury instruction[***]

III.-IV.[***]

V. Blakely/Cunningham claim
Defendant's sentence included a doubled upper term for the grossly negligent-discharge count. Doubled upper terms for the other counts were imposed and stayed. Defendant argues that the imposition of these upper terms violated the Sixth Amendment as interpreted in Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
In Blakely, the Supreme Court held that a sentence for kidnapping imposed under the Washington sentencing scheme violated the defendant's Sixth Amendment right to a jury trial. (Blakely, supra, 542 U.S. at pp. 298, 304, 124 S.Ct. 2531.) Under Washington law, the trial court could impose a sentence longer than 53 months only if it found substantial and compelling reasons to do so. (Id. at p. 299, 124 S.Ct. 2531.) The judge found that the crime was committed with "`deliberate cruelty,'" and imposed a sentence of 90 months. (Id. *99 at p. 298, 124 S.Ct. 2531.) The Supreme Court held that this violated the Sixth Amendment as interpreted in Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Blakely, supra, 542 U.S. at p. 301, 124 S.Ct. 2531.) It did not matter that the offense was a class B felony, and that class B felonies carried a maximum sentence of 10 years, because the state's sentencing law did not allow the sentence to exceed 53 months without judicial factfinding. "Our precedents make clear ... that the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Id. at p. 303, 124 S.Ct. 2531.) The court continued:
"In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority." (Blakely, supra, 542 U.S. at pp. 303-304, 124 S.Ct. 2531.)
After briefing was completed in this case, the United States Supreme Court issued its decision in Cunningham, supra, ___ U.S. ___, 127 S.Ct. 856, overruling People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 and holding that Blakely applies to the imposition of upper terms under California law. (Cunningham, supra, ___ U.S. ___, 127 S.Ct. at pp. 860, 871.) The imposition of an upper term under California law is unconstitutional, therefore, unless it is based on prior convictions, facts found by the jury, or facts admitted by the defendant.

A. Effect of three-strikes findings
We hold that the imposition of upper terms did not run afoul of the Supreme Court's precedents in this case. The heart of the analysis of a sentence under Blakely is the determination of the maximum sentence. The maximum sentence within the meaning of Blakely is the greatest sentence the judge can impose based on the facts reflected in the jury verdict or admitted by the defendant, plus the fact of the defendant's prior convictions, if any. The sentences imposed in this case did not exceed the maximum sentence within the meaning of Blakely because this was a three-strikes case. Defendant waived the right to a jury trial on the prior convictions alleged in the information and the court found those allegations true. No further findings were necessary before a three-strikes sentence of 25 years to life could be imposed. The court's decision on defendant's Romero request was discretionary and could have been denied without any findings of fact. In other words, the maximum sentence available within the discretion of the sentencing court without any further factual findings, based on prior convictions to which defendant had waived a statutory right to a jury trial, was 25 years to life. The lesser sentence the court imposed was, therefore, permissible under Blakely and Cunningham.

*100 B. Error, if any, was harmless[]

DISPOSITION
The judgment is affirmed.
VARTABEDIAN, Acting P.J., and HILL, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II.B, III, IV, and V.B.
[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.
[**] See footnote, *, ante.
[***] See footnote *, ante.
[] See footnote *, ante.